211 N.J. Super. 488 (1986)
511 A.2d 1287
SAINT BARNABAS MEDICAL CENTER, PLAINTIFF,
v.
COUNTY OF ESSEX AND JESSE WILLIAMS, DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
Decided January 24, 1986.
*489 Michael Pesce for plaintiff (Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone, attorneys; Barry H. Ostrowsky of counsel; Michael Pesce and Todd Brower on the brief).
Oliver W. Cato for defendant County of Essex (David H. Ben-Asher, Essex County Counsel, attorney).
VILLANUEVA, J.S.C.
This is a complaint by a private, nonprofit hospital, for all hospital charges incurred, against a county and the prisoner it brought to the hospital for treatment of life-threatening injuries.
*490 The issue is whether a county can relieve itself of further responsibility for hospital charges for the prisoner it brought to the hospital by having his custodial sentence suspended.
The court holds that once a county undertakes its obligation to provide medical services to its prisoner at an outside medical facility, it cannot escape further responsibility by having its prisoner's sentence suspended.
Defendant Jesse Williams (hereinafter "Williams") was sentenced to a fifteen-day jail sentence by the Newark municipal court on July 13, 1982 and was a county prisoner from then until July 19, 1982.
On July 16, 1982, while an inmate at the Essex County jail annex, Caldwell, Williams set himself on fire. As a result of this incident, county caused Williams, accompanied by county personnel, to be transported to plaintiff Saint Barnabas Medical Center (hereinafter "St. Barnabas"), because of the existence of its burn unit, where he remained a patient until September 2, 1982.
Since St. Barnabas was not the hospital to which county brought inmates on a routine basis, there existed no express agreement between St. Barnabas and county concerning the payment for medical services rendered to any inmates. However, the admission/discharge record noted:
Patient from Essex Cty. Jail Caldwell, N.J. Phone 226-7777 Ext. 213 For Information about Patient.
On July 19, 1982, Elizabeth Neff, the supervisor of accounts in the business office of the jail annex, received a call from Ray Grimm of St. Barnabas seeking to confirm that Williams was a county inmate and that the hospital bill should be sent to the jail annex. While Neff initially confirmed this advice, she called back later that day to indicate that the custodial sentence of Williams had been suspended and that the jail would pay the medical charges incurred only through July 19, 1982, the date his sentence was suspended.
Neff confirmed this oral advice by letter to Grimm dated July 23, 1982:

*491 As per our conversation earlier this week, I am enclosing a copy of the court order suspending the custodial sentence of Jessie Williams. As of July 19, 1982, we are no longer responsible for him. We will, however, pay for services incurred from Friday, July 16th until Monday, July 19th.
Grimm responded by letter dated August 10, 1982:
I received your letter, dated July 23, 1982, enclosing a copy of the court order suspending the custodial sentence of Jessie Williams.
Please be advised that the Medical Center considers Essex County Jail responsible for the total cost of the care for Mr. Williams, since he was brought in under your custody and the Medical Center was never made aware of any suspension or probable suspension by the county until after admission.
Thereafter, Williams remained as a patient through September 2, 1982, incurring charges totaling $53,725.59.
On September 22, 1982, St. Barnabas sent a bill for these services to both Williams and county. Neither has made any payments against this bill. County acknowledges, however, its liability to pay for services rendered through July 19, 1982, but has not done so because it never received a "shortened bill." There is no private insurance available to satisfy this bill.
St. Barnabas brought this law suit against Williams and Peter Shapiro, County Executive of Essex County, Board of Chosen Freeholders of the County of Essex and Thomas J. D'Alessio, Sheriff of Essex County.
At the hearing, plaintiff was permitted by consent to amend the complaint to delete all public officials and substitute for them the County of Essex (hereinafter "county").
County has moved for summary judgment dismissing the complaint against county and all its officials. St. Barnabas has filed a cross-motion for summary judgment against county for the full amount of its bill.
The complaint was never served on Williams, despite the fact that Williams has a law suit for damages pending against county in Monmouth County, obviously with the wrong venue. R. 4:3-2. Therefore, the complaint will be dismissed without prejudice against him.
The county contends that it is not responsible for hospital charges for a prisoner after his sentence is suspended because:
*492 (a) Although county has a duty to provide necessary medical care to prisoners, it does not have to provide such care for non-prisoners;
(b) county is not liable because there was no contract with St. Barnabas;
(c) No enforceable contract is binding upon county without the approval of the county executive and the county board of chosen freeholders;
(d) Any alleged apparent authority of a county employee did not and cannot bind the county;
(e) The doctrine of equitable estoppel does not apply against county under these facts.
The county's contentions, however, beg the real question, which is whether, during treatment at a private hospital for life-threatening injuries to a prisoner taken there by a penal institution, the public entity governing that institution can be relieved of its responsibility to pay for such treatment by having the prisoner's sentence suspended.
The pertinent regulations provide:
In a county panel (sic) institution ... medical services include all measures needed to keep the inmate population in good health. While confined in such institutions prisoners are wards of the county .. . N.J.A.C. 10:34-3.1(a).
... They have a right to ... proper medical care.... Finally, the procedures of the jail must insure the health and welfare of the prisoners. N.J.A.C. 10:34-3.25.
In the case of those seriously ill, the physician may recommend the removal of the prisoner to a civilian hospital, under proper custodial arrangement. [N.J.A.C. 10:34-3.7(a)6.]
County contends that it requested the court to modify the prisoner's sentence to time served because of the small amount of time that remained to be served (12 days), the fact that his injuries did not make him an escape risk or a danger to society or the hospital in particular, and because of the high cost of providing a 24-hour guard for the prisoner. Such modification is permissible. R. 3:21-10(a), -10(b)(2); N.J.A.C. 10:34-3.7(a)7.
County contends that once a prisoner's sentence has been completed, whether by a full term being served, being commuted *493 by the Governor or being vacated or shortened by a court, the jail has no duty to provide him medical care because the jail would be acting in contravention of the language and intent of the regulations which govern it. The county contends further that the only way the jail could be obligated to provide care to an ex-prisoner is by an express contract to do so or by order of a court pursuant to a court action.
In Revere v. Massachusetts General Hospital, 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983), the issue was which entity (the government, the hospital or the prisoner) should pay for the medical care of a suspect shot prior to an arrest and transported to a hospital for emergency care. The case was decided on constitutional grounds. The Court stated that the municipality's duty to obtain the necessary medical care did not include the additional duty of compensating the private hospital which provided the care.
... As long as the governmental entity ensures that the medical care needed is in fact provided, the Constitution does not dictate how the cost of that care should be allocated as between the entity and the provider of the care. That is a matter of state law. [463 U.S. at 245, 103 S.Ct. at 2983].
The Court noted that:
It is not even certain that mandating government reimbursement of hospitals that treat injured persons in police custody would have the effect of increasing the availability or quality of care. Although such a requirement would serve to eliminate any reluctance on the part of private hospitals to provide treatment, it also might encourage police to take injured detainees to public hospitals, rather than private ones, regardless of their relative distances or ability to furnish particular services. [463 U.S. at 246, 103 S.Ct. at 2984].
In the instant case, the prisoner was taken to St. Barnabas, rather than to the University of Medicine and Dentistry where the prisoner was a registered clinic patient and where the county generally sends prisoners for outside medical care, because of its certification as a burn-specialty unit.
Once the county took its prisoner to the hospital for life-threatening injuries, the hospital had the right to rely on the credit of the county. Whether county could have limited its responsibility when the prisoner was admitted need not be *494 discussed because the county did not attempt to do so at the time of admittance.
Once St. Barnabas undertook treatment of the prisoner in its special-burn unit, it could not have transferred that responsibility without the consent of its patient (prisoner until July 19). It had no choice but continue the treatment originally requested by the county.
Even in the absence of county's admission of limited liability, the law would impose such liability in any event. N.J.A.C. 10A:31-3.15 (concerning the medical, dental and health care of inmates of county correctional facilities) provides that during period of confinement the inmate is a ward of the county and it is responsible for all of the inmates' health needs. In addition, each correctional facility must provide 24-hour emergency medical care and have a written plan which shall include arrangements for removing inmates to one or more designated hospital emergency rooms or other appropriate health facilities. N.J.A.C. 10A:31-3.15(b)(16).
Regulations promulgated by the County of Essex establish a Department of Health and Rehabilitation with a Division of Community Health Services whose function it is, inter alia, to "promote or provide medical and health services for inmates of prisons or jails maintained and operated by the County." Essex County Code, § 9.2.5(a)(vi). See also Medical Center Hospital, Inc. v. Coleman, 462 So.2d 588 (Fla.Ct.App. 1985), where the court held that a county sheriff was responsible for the medical bills incurred by a prisoner in his custody, pursuant to an administrative regulation which, like this one, obligated the county sheriff to furnish medical care for his prisoners.
Thus, by county's own admission, it is undisputed that there was an understanding between plaintiff St. Barnabas and county for the county to pay for the medical services rendered to Williams. The only issue in this case is not whether such an agreement existed, but the scope thereof, (i.e., could it be unilaterally terminated by county by getting Williams' custodial sentence subsequently suspended?).
*495 County's reliance upon Cooper Medical Ctr. v. Johnson, 204 N.J. Super. 79 (Law Div. 1985) is misplaced. In Cooper the issue was whether there was any liability on the part of a municipality for the medical expenses of a burglary suspect shot by the municipal police. The township first-aid squad, summoned by police, transported suspect to a hospital for treatment. The admission form prepared by the hospital indicated that suspect was admitted as an emergency, non-custodial patient. In this case, the admission form indicated that patient came from the Essex County Jail, Caldwell and that he was brought by personnel from the jail who had him in custodial status. In addition, county has repeatedly acknowledged financial responsibility for Williams at the time he was admitted to plaintiff's facility.
County admits that there was an oral agreement between it and plaintiff St. Barnabas for payment for the care of Williams upon his admission to the hospital on July 16, 1982. However, defendant county contends that its obligation to pay for this care terminated upon the suspension of the remainder of Williams' sentence by the Newark municipal court on July 19, 1982.
County seeks now to impose a condition to its admitted agreement with plaintiff which was not communicated to plaintiff, except after the fact. Such a position is contrary to the principle that essential terms and conditions of a contractual arrangement between parties must be communicated in order to be enforceable.
As stated in Cohn v. Fisher, 118 N.J. Super. 286 (Law Div. 1972):
Under the objective theory of mutual assent followed in all jurisdictions, a contracting party is bound by the apparent intention he outwardly manifests to the other contracting party. To the extent that his real, secret intention differs therefrom, it is entirely immaterial. See Looman Realty Corp. v. Broad St. Nat. Bank of Trenton, 74 N.J. Super. 71 (App.Div. 1962); Leitner v. Braen, 51 N.J. Super. 31 (App.Div. 1958). [at 291-292]
This is precisely the situation here. Even assuming that county intended that its monetary responsibility for Williams would *496 end upon the termination of his custodial sentence, this intention was never communicated to St. Barnabas until after Williams was admitted and was receiving care.
Therefore, county is estopped from denying financial responsibility for the medical expenses incurred by Williams after the suspension of his sentence on July 19, 1982.
In the case of Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493 (1955), the Supreme Court held that the essential principle of the policy of estoppel is designed to preclude one from "taking a course of action that would work injustice and wrong to one who with good reason and in good faith has relied upon such conduct." Id. at 503-504.
The elements of equitable estoppel are:
The alleged conduct was done, or representation was made, intentionally or under such circumstances that it was both natural and probable that it would induce action. Further, the conduct must be relied on, and the relying party must act so as to change his or her position to his or her detriment. [Miller v. Miller, 97 N.J. 154, 163 (1984)]
These elements are fully satisfied here, and county is now estopped from imposing a condition to its agreement which was not communicated to plaintiff when the agreement was made.
County asserts that equitable estoppel does not apply because the county is not bound by the unauthorized acts of its subordinate employees which are not later ratified. However, this argument misses the mark because county has admitted and ratified an agreement between it and plaintiff to pay for the care rendered to Williams. Again, the only issue is whether that responsibility terminated upon the subsequent suspension of Williams' sentence.
It is true that generally acts of officials which are within their apparent authority but in excess of their actual authority will not bind the government which they represent unless ratified by it. State v. Erie Railroad Co., 23 N.J. Misc. 203, 42 A.2d 759 (Sup.Ct. 1945).
The county admits that it had a duty to provide or obtain such treatment. N.J.A.C. 10:34-31a, -3.25 and -3.7(a)6. However, *497 it contends it could unilaterally terminate its duty to pay for such treatment simply by having the prisoner's sentence suspended.
County's obligation to pay for the medical care rendered to Williams arose at the time that he initially set himself on fire and endured until the termination of the continuous care necessitated as a result thereof. At the time of the original incident Williams was admittedly a ward of the county, and the county was responsible for his medical care. The subsequent suspension of his sentence did not terminate the county's responsibility when he was, at that time, still receiving medical care necessitated by the original incident.
This view is in accord with the law generally regarding health insurance coverage for medical expenses incurred after the expiration of coverage arising out of an injury that occurred during the policy term. The rule in that context is that, absent ambiguous policy language to the contrary, the carrier is obligated to pay for expenses incurred as a result of an accident which occurs during the policy period, even if the expenses are incurred after its expiration. See Annotation, "Insurer's liability under accident policy which terminated after accidental injury but prior to completion of medical treatment, hospitalization and the like," 75 A.L.R.2d 876 (1959).
The New Jersey Administrative Code lends further support for this view. N.J.A.C. 10:34-3.7, which prescribes general rules governing medical services for county correctional facilities, provides in pertinent part:
6. In the case of those seriously ill, the physician may recommend the removal of the prisoner to a civilian hospital, under proper custodial arrangement.
7. The court has the power to modify the sentence of a prisoner who is seriously ill and to remove him to a suitable institution where proper treatment may be administered. [N.J.A.C. 10:34-3.7(a).]
Thus, these regulations contemplate exactly what occurred here. (The removal of a prisoner to an outside facility for proper care and the modification of his sentence.). However, there is no suggestion in these regulations that his sentence *498 modification in any way affects the responsibility of county to provide and pay for continued medical care.
County also contends that there was no contract among the Essex County government, St. Barnabas and Williams to provide Williams with medical care after his custodial sentence ended. The jail annex is part of the Department of Public Safety, one of the eight departments of the Essex County government organized under the jurisdiction of the county executive. The departments and their various subparts or divisions do not have legal authority to bind the county in contract without obtaining the approval of the county executive and, in most instances, the board of chosen freeholders.
However, the county employees have the authority and duty to comply with law, regardless of any express agreement formally executed and approved by the proper board and executive. In this case, it means that county had a duty to provide medical treatment for its prisoner for an incident that occurred while he was a prisoner and not just for the first four days of his 49-day stay at the hospital.
Motion of county for summary judgment is denied. Cross motion of plaintiff for summary judgment against defendant county for $53,725.59 without interest is granted.