SAINT BARNABAS MEDICAL CENTER, PLAINTIFF-RESPONDENT, v. JESSE WILLIAMS, DEFENDANT, AND COUNTY OF ESSEX, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 2, 1987—Decided March 23, 1987.

Before Judges MORTON I. GREENBERG, J.H. COLEMAN and GRUCCIO.

*Denise P. Coleman,* Assistant Essex County Counsel, argued the cause for appellant (*David H. Ben-Asher,* Essex County Counsel, attorney, *Oliver W. Cato,* Assistant Essex County Counsel, on the brief).

*Todd Brower* argued the cause for respondent (*Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone,* attorneys, *Barry H. Ostrowsky* and *Michael Pesce,* of counsel; *Michael Pesce* and *Todd Brower,* on the brief).

The opinion of the court was delivered by

MORTON I. GREENBERG, P.J.A.D.

This matter comes on before the court on appeal by defendant, the County of Essex, from a final judgment dated January 24, 1986 in favor of plaintiff, Saint Barnabas Medical Center, for $53,725.79 against the County for medical services rendered by plaintiff to defendant Jesse Williams. This judgment followed an opinion by Judge Villanueva on cross-motions for summary judgment. *See* 211 *N.J.Super.* 488 (Law Div.1986).

The basic facts set forth by the motion judge are undisputed and need only be summarized.[1] Williams was sentenced to a 15–day jail sentence on July 13, 1982 and was then confined in a county facility to serve that time. On July 16, 1982, he set himself on fire and consequently was taken to plaintiff's hospital for treatment in its burn unit. Plaintiff and the County had no general agreement for payment by the County for services rendered to inmates and when Williams was admitted to the hospital no express agreement was reached between the County and plaintiff regarding payment for his treatment.

On July 19, 1982 the County obtained an order from the court suspending Williams' sentence and it thereafter took the position, to which it adheres, that it is liable for Williams' expenses up to the time of the suspension of the sentence but not thereafter. Williams remained in the hospital until September 2, 1982 at a total cost of $53,725.99, the reasonableness of which is not challenged.

In view of the County's refusal to pay plaintiff's bill, this action was brought and the motions for summary judgment ensued. In his opinion Judge Villanueva stated that the question for resolution was whether the County could be relieved of its responsibility to pay for the treatment by obtaining the order suspending sentence. 211 *N.J.Super.* at 492. He pointed out that the County was responsible for the medical services as

[1] While the County suggests that because of a dispute of facts summary judgment was inappropriate, we are satisfied that the factual issues it raises are not material to the case, though we remand the matter for other reasons.

long as Williams was an inmate. He indicated that even though the County contended it was not responsible for care to a former inmate "[o]nce the county took its prisoner to the hospital for life-threatening injuries, the hospital had the right to rely on the credit of the county." 211 *N.J.Super.* at 493. He said that after plaintiff admitted Williams it could not have transferred him without his consent and "had no choice but [to] continue the treatment originally requested by the county." 211 *N.J.Super.* at 494. The judge also stated that the County was in effect attempting to amend its agreement with plaintiff by adding the condition that its liability would end when the sentence ended. 211 *N.J.Super.* at 495. Further, he found the County was estopped from denying liability. 211 *N.J.Super.* at 496. Thus, he entered the judgment under appeal.

Though we reverse the judgment for the reasons we later set forth, we agree with Judge Villanueva's general approach. In our view, however, the issue is somewhat broader than he suggested, for even if the County had not obtained the order suspending Williams' sentence, his term would have expired before he was discharged from the hospital. Thus, this is not a case in which, but for the order obtained after the hospital admission, Williams would have been an inmate throughout his hospital confinement. Accordingly, the actual issue is whether the County is liable for hospital services originally authorized for an inmate during the period of his incarceration and continuously supplied thereafter following the expiration of his custodial term, first as modified after the hospitalization had commenced, and then as originally imposed.

Our enlargement of the issue is, however, of limited significance as the judge's reasoning holding the County liable is clearly applicable for the period after July 28, 1982, when service of the sentence would have been completed if it had not been suspended. We adopt that reasoning subject to the limitation we hereafter state. However, we add the following with respect to the County's liability. As noted in *Shapiro v. Solomon*, 42 *N.J.Super.* 377, 383 (App.Div.1956), "[it] is ele-

mentary, of course, that the rendition of services at the request of another, under circumstances which negative the idea that they were gratuitous, creates an obligation implied from the request to pay what the services are reasonably worth." Here it is clear beyond question that plaintiff did render services at the request of the County in circumstances which suggested that plaintiff would be paid. Thus, there was an implied contract between plaintiff and the County. Accordingly, the fact that Williams may not have been entitled to medical care at county expense after his sentence was terminated or expired is not germane, for regardless of the County's duty to Williams, plaintiff started supplying its services to Williams at the County's request. We also point out that the County's position could lead a hospital to refuse to accept an inmate for treatment and thus encourage inhumane conduct. We further note that although this case involved a life-threatening injury, we see no reason why the principle adopted here would not apply to a less serious condition.[2]

Notwithstanding our overall agreement with Judge Villanueva, fundamental fairness requires that this case be remanded for further proceedings. As we have already noted, Judge Villanueva indicated that plaintiff was required to continue the treatment originally requested. While this may well be true, we find no support for it in the record beyond plaintiff's attorney's assertion of it at oral argument. It seems to us that the implied contract between plaintiff and the County should be understood to require the County to pay for Williams' treatment after the termination of the sentence, whether by reason of the order of July 19, 1982 or because it expired as originally imposed, only so long as plaintiff could not in some reasonable

---

[2]The decision in *Cooper Medical Center v. City of Camden,* 214 *N.J.Super.* 493 (App.Div.1987), decided January 15, 1987, is not contrary to the result reached here, as the patients there were not sentenced and confined before requiring treatment but were injured during their apprehension. Thus, there is no suggestion in that case that the public entities, unlike the County here, were initially liable for the hospital's bill.

and lawful way terminate Williams' stay in its hospital. Thus, if plaintiff could have discharged Williams earlier, or transferred him to another facility which would have accepted him, the County has no obligation to pay for his hospitalization after that time.

On the remand plaintiff, in accordance with the usual rules with respect to allocation of the burden of proof, will have the burden to prove that the confinement was necessary until September 2, 1982. *See Cohen v. Fair Lawn Dairies, Inc.*, 86 *N.J.Super.* 206, 216 (App.Div.1965), aff'd 44 *N.J.* 450 (1965). Conceivably, it may be entitled to recover for only part of the period from July 19, 1982 until that date. It seems fair to us to place this burden on plaintiff for as between it and the County, plaintiff is in the better position to establish the length of the hospitalization needed.

The order of January 24, 1986 is reversed and the matter is remanded to the Superior Court, Law Division, Essex County, for further proceedings not inconsistent with this opinion. We do not retain jurisdiction. No costs are allowed on this appeal.