740 A.2d 681

JOHN T. MULLINS, PLAINTIFF–RESPONDENT, v.
FIRST NIGHT WAYNE AND TOWNSHIP OF
WAYNE, DEFENDANTS–APPELLANTS.

RANDY DE LEO, PLAINTIFF–RESPONDENT, v.
FIRST NIGHT WAYNE AND TOWNSHIP OF
WAYNE, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued October 14, 1999—Decided November 23, 1999.

Before Judges STERN and WEFING.

*John J. McKniff*, Assistant Wayne Township Attorney, argued the cause for appellant Township of Wayne (*John Fiorello*, attorney; *Mr. McKniff*, on the brief).

Respondent John T. Mullins did not file a brief.

Randy De Leo argued the cause pro se.

The opinion of the court was delivered by

WEFING, J.A.D.

The Township of Wayne has appealed from a judgment entered against it following a bench trial in the Special Civil Part of the Law Division. We reverse.

In the early part of 1997, certain residents of Wayne met with the Township's Director of Parks and Recreation and explained that they were forming a volunteer organization known as First Night Wayne. The purpose of First Night Wayne was to organize and run a variety of non-alcohol-related entertainment events within the Township for New Year's Eve. They explained that similar events had been staged in a number of municipalities in New Jersey and across the nation. They told him they had met with representatives of various churches and synagogues in the Township to make arrangements to use their facilities for some of the events; they requested permission to utilize Township facilities as well. They did not ask for any financial contribution from the Township and the Township did not offer any.

Randy De Leo and John Mullins are musicians who, in November 1997, entered a contract with First Night Wayne, which had been incorporated as a separate entity, to perform on December

31, 1997. The agreed-upon fee was $750, to be paid within thirty-one days of their performance. When the contract was originally signed, it was unclear where De Leo and Mullins were to perform. Later, they were informed that they were to perform at the Township's municipal building.

On December 31, 1997, the Township permitted First Night Wayne to use two of the Township's buses to shuttle patrons between different venues in the Township. It also supplied off-duty police officers to assist in security.

De Leo and Mullins did perform that night in accordance with their contract with First Night Wayne, but when the time came for payment, First Night Wayne lacked the necessary funds. The event had not generated sufficient moneys to permit First Night Wayne to satisfy its various contractual obligations. In March 1998, De Leo and Mullins received a payment of $80.

De Leo and Mullins each began suit for the difference and named First Night Wayne and the Township of Wayne as defendants. The matters were consolidated. First Night Wayne did not answer and a default judgment was entered against it.

The Township defended on the ground that plaintiffs' contract was with First Night Wayne, not the Township, and that the Township had no legal responsibility to satisfy the financial obligations of First Night Wayne, an entity independent of the Township. The Township informed the trial court that efforts had been made to solicit voluntary contributions to meet the debts left by First Night Wayne, but that those efforts had not raised sufficient funds. We were informed at oral argument that the outstanding obligations left by First Night Wayne total approximately $36,000.

The trial court found that there was no privity of contract between plaintiffs and the Township, but that the Township had received a benefit as a result of the event being held. It concluded that since the Township had received a benefit, it would be unjustly enriched if plaintiffs were not paid for their efforts. The

trial court relied upon *Wanaque Borough Sewerage Authority v. Township of West Milford,* 144 *N.J.* 564, 677 *A.*2d 747 (1996), as authority for its determination. The trial court ruled that there was a contract implied in law and entered judgment against the Township.

While we cannot fault the trial court for its effort to make plaintiffs whole, we are satisfied that we cannot legally sustain the judgment that it entered. *Wanaque Borough,* upon which the trial court relied, is wholly distinguishable from the present matter.

In that case, the Township of West Milford had, in 1971, consented to the formation of the Wanaque Valley Regional Sewerage Authority and, together with other municipalities, engaged in negotiations over several years concerning the terms and conditions of a proposed service agreement. *Id.* at 570, 677 *A.*2d 747. In 1976, through its Municipal Utilities Authority, West Milford advised the regional authority that it would not enter a service agreement with the regional authority or use the regional authority's treatment facilities. *Id.* at 571, 677 *A.*2d 747. The decision of West Milford not to participate in a regional treatment program, together with the subsequent withdrawal of another municipality, made the original regional proposal unfeasible. *Ibid.* Litigation resulted to recover costs involved in the original planning process and the extra costs incurred as a result of the collapse of the original regional approach. *Id.* at 571–72, 677 *A.*2d 747.

The Supreme Court affirmed this court's determination that West Milford could be held liable for a proportionate share of those expenses, relying on the principles of quasi-contract, also referred to as a contract implied in law. The Court noted that a recovery in quasi-contract is based upon an underlying duty and the unjust enrichment of one party when another party satisfies that underlying duty. *Id.* at 574–75, 677 *A.*2d 747. It stated, "[t]he trial court was correct to conclude that without a promise there could be no contract. But that does not mean that without a

promise there can be no duty." *Id.* at 575, 677 *A.*2d 747. In reaching its determination that West Milford had a responsibility for a portion of the expenses, the Court noted the municipality's obligation to explore methods of providing safe waste water treatment facilities for its citizens, and that the municipality's ultimate decision that its citizens would be best served by a local treatment plan was, at least in part, premised on the knowledge obtained during the regional planning process. *Id.* at 576–77, 677 *A.*2d 747. It was, thus, only equitable that its citizens contribute to a portion of those costs.

The principle that quasi-contractual recovery rests upon an underlying duty is illustrated in *Saint Barnabas Medical Center v. County of Essex,* 111 *N.J.* 67, 543 *A.*2d 34 (1988). A prisoner confined at the Essex County Jail Annex set himself on fire and was transported to the Burn Unit at Saint Barnabas by correction officers who were on duty at the time. The county did have a contract with University Hospital in Newark to provide medical treatment for inmates, but personnel at the jail evidently recognized the need for the specialized care available at Saint Barnabas. The prisoner's injuries were such that he was hospitalized for a longer period of time than he had been sentenced for. *Id.* at 70–71, 543 *A.*2d 34.

When the county would not pay the cost of the entire hospitalization (approximately $54,000), the hospital commenced suit. The trial court found the county liable for the entire amount. *Saint Barnabas Med. Ctr. v. County of Essex,* 211 *N.J.Super.* 488, 498, 511 *A.*2d 1287 (Law Div.1986). This court affirmed the underlying liability but determined that the matter should be remanded for consideration of whether the hospital could have discharged or transferred the inmate at any date earlier than his actual discharge. *Saint Barnabas Med. Ctr. v. Jesse Williams,* 216 *N.J.Super.* 161, 523 *A.*2d 248 (App.Div.1987).

The Supreme Court noted the fundamental duty resting on the county to provide appropriate medical care for the inmates in its custody, but that no concomitant obligation rested on the county to

provide medical care for indigent county residents. *Saint Barnabas Med. Ctr., supra,* 111 *N.J.* at 74, 543 *A.*2d 34. It also noted Saint Barnabas's duty to accept and treat the inmate when he arrived. *Id.* at 75, 543 *A.*2d 34. The Court concluded that because the hospital had fulfilled the county's obligation to provide medical care for an inmate, the county had received a benefit as a result of the hospital's actions. *Id.* at 79, 543 *A.*2d 34. The county had no obligation, however, to provide medical care for the inmate after the inmate had completed his sentence. *Id.* at 81–82, 543 *A.*2d 34. The Court thus concluded that the county could be held liable, under quasi-contract, for the costs of hospitalization during the term of the inmate's sentence, but had no liability for those costs incurred after the sentence had expired. *Id.* at 84, 543 *A.*2d 34.

In the present matter, there is no comparable duty and no comparable benefit. We are satisfied that quasi-contract is thus inapplicable as a matter of law. Surely, a municipality is under no duty to sponsor entertainment programs for its citizens, no matter how worthwhile they may be. Further, while a program such as First Night may enable individuals to greet the new year in a safe, alcohol-free environment, that is not the type of benefit that could support a finding of unjust enrichment against the municipality.

We may regret that the result of our decision is that plaintiffs will not receive full compensation for the performance they rendered on December 31, 1997. That does not justify us, however, in shifting the obligation for payment from First Night Wayne to the Township and its taxpayers.

Reversed.