JOSEPH GOTTESMAN, TRADING AS GOTTESMAN'S DELI-
CATESSEN, PETITIONER-APPELLANT, AND FLEISSNER
REALTY CO., INC., PETITIONER-APPELLANT, v. DI-
VISION OF EMPLOYMENT SECURITY, DEPARTMENT
OF LABOR AND INDUSTRY, STATE OF NEW JERSEY,
RESPONDENT.

Argued September 23, 1957—Decided October 21, 1957.

146 

*Mr. Thomas N. Bantivoglio* argued the cause for the petitioners-appellants (*Messrs. Archer, Greiner, Hunter & Read,* attorneys for petitioner-appellant Joseph Gottesman, trading as Gottesman's Delicatessen; *Mr. John P. Hauch, Jr.,* on the brief. *Messrs. McCarter, English & Studer,* attorneys for petitioner-appellant Fleissner Realty Co., Inc.; *Mr. James R. E. Ozias,* of counsel).

*Mr. George J. Miller* argued the cause for the respondent (*Mr. Herman D. Ringle,* on the brief).

The opinion of the court was delivered by

BURLING, J. These are appeals pursuant to *R. R.* 4:88–8 from decisions of the Commissioner of Labor and Industry, affirming rulings of the Director of the Division of Employment Security which denied portions of appellants' claims for refund of contributions paid under the Unemployment Compensation Law. The liability in dispute is for those contributions which accrued prior to July 1, 1948, and interest and penalties thereon. By order of the Appellate Division dated March 15, 1957 the causes were consolidated for appeal. By our own motion, we certified the case prior to hearing below. *R. R.* 1:10–1.

The facts are not in dispute and have been stipulated.

Appellants, Gottesman and Fleissner, became indebted to the Division of Employment Security in 1946, but they failed to file required reports and the Division had no knowledge of their liability. It is stipulated that no fraud was involved in the failure to make reports. In 1954 the Division first acquired knowledge of their respective liabilities. On June 17, 1954 the Division determined that Gottesman owed contributions totalling $2,726.16 for the years 1946 to 1953, inclusive, plus interest and penalties. Gottesman paid the amount owing for contributions. On March 26, 1954 the Division assessed Fleissner in the amount of $2,118.02, which sum represented liability for contributions, interest and penalties which accrued during the years 1946 to 1949, inclusive. Subsequently, Fleissner paid the amount due for such contributions, interest and penalties.

Gottesman and Fleissner made claims for refunds pursuant to *R. S.* 43:21–14(*f*); Gottesman requesting a refund of that portion of the contributions paid for the years 1946 to 1949, inclusive, in the amount of $1,252.78 and for abatement of all penalties for those years, and Fleissner requesting a refund of the entire amount paid for the years 1946 to 1949. Both refund claims were premised upon the four-year limitation provision of *N. J. S. A.* 43:21–14(*b*) (*L.* 1952, *c.* 187, *p.* 657, § 6).

Gottesman's claim for a refund came to the attention of the Division's Collector of Delinquent Accounts. That administrative official, by letter dated June 1, 1956, authorized a refund of contributions and interest for the calendar years 1946 through 1949 and the first quarter of 1950, amounting to $1,417.97, and issued a certificate of overpayment in the above amount.

Fleissner's claim came to the attention of the Chief of Contributor's Service of the Division who, by letter dated June 11, 1956, approved the claim in view of "the decision of the courts in the case of Eureka Printing Co."

The action taken in both cases was reviewed by the Director of the Division. The Director approved the refund of that

portion of the amount which had been paid by Gottesman with respect to liabilities which accrued from July 1, 1948 to March 31, 1950, amounting to $495.80, and denied a refund of the amounts which accrued prior to July 1, 1948. Similarly as to Fleissner, the Director approved a refund of that portion of the amount that had been paid with respect to liability which had accrued from July 1, 1948 to December 31, 1949, inclusive, i. e., $740.71, and denying a refund of the amount with respect to liability which accrued prior to July 1, 1948.

In both instances the Commissioner of the Department of Labor and Industry with written opinion affirmed the decision of the Director. The Commissioner's view was that liability for any period prior to the third quarter of 1948 had to be paid at any time the Division made its assessment.

The initial question presented on this appeal is whether the four-year limitation on the liability of employers for unpaid unemployment contributions prescribed by *N. J. S. A.* 43:21–14(*b*), as amended by *L.* 1952, *c.* 187, *p.* 657, § 6, operates to bar the Division of Employment Security from assessing and claiming in 1954 employer contributions due prior to July 1, 1948.

*N. J. S. A.* 43:21–14(*b*), as amended in 1952, provides in part,

"(b) * * * ; provided, however, that except in the event of fraud, no employer shall be liable for contributions, penalties or interest unless assessed before 4 years have elapsed from the time when the contributions were due * * *."

In the case of *Eureka Printing Co. v. Division, etc., Department of Labor and Industry,* 21 *N. J.* 383 (1956), this court, in an opinion by Justice Jacobs, held that the legislative design was that the statute was to be given retrospective effect and that it barred assertion by the Division in 1954 of contribution claims for the calendar year 1949 which became due on January 31, 1950. Justice Jacobs outlined the three positions taken by courts throughout the country

on the question of the retrospective application of a statute of limitations. He said:

"Some have taken the position that, unless it clearly provides otherwise, a statute of limitations is to be construed as purely prospective and as having no application to causes of action which accrued prior to its passage. * * * Others have taken the position that, unless the statute clearly provides otherwise, the period of limitations commences when the cause of action is first subjected to its operation; thus a cause of action which accrued prior to the passage of a two year statute of limitation could be asserted within two years after such passage. * * * Still others have taken the position that, unless it clearly provides otherwise, a statute of limitations is to be construed retroactively and applicable to claims which accrued before its passage, provided the newly prescribed period of limitations had not entirely run and the unexpired portion constituted a reasonable time within which action could still be commenced." (21 *N. J.* at *page* 388)

He then concluded:

"New Jersey decisions have heretofore applied statutes of limitations to pre-existing causes of action where it appeared that at the time of their enactment there still remained a reasonable period during which claims could be asserted. See *Johnson v. Asbury Park Press, Inc.,* 14 *N. J. Misc.* 282 (*Sup. Ct.* 1936) affirmed 117 *N. J. L.* 533 (*E. & A.* 1937); *Marston v. Seabury,* 3 *N. J. L.* 435 [*Reprint* 28] (*Sup. Ct.* 1808). *Cf. Bretthauer v. Jacobson,* 79 *N. J. L.* 223, 225 (*Sup. Ct.* 1910); *Union County Building & Loan Ass'n v. Weltchek,* 12 *N. J. Misc.* 847 (*C. P.* 1934). * * * *L.* 1952, c. 187, contained nothing to indicate that the Legislature intended to confine its application to future causes of action and leave pre-existing causes of action wholly without any applicable period of limitation; after its passage there still remained over a year and a half during which the respondent could have made its assessment and still have come within the prescribed statutory period of four years from the date when the appellant's contributions were due; it seems to us that giving due consideration to the magnitude of the respondent's task (with which the Legislature was fully aware) this clearly constituted a reasonable time for the assertion of the respondent's claim." (21 *N. J.* at *page* 393)

In the case *sub judice* the respondent asserts that claims for those contributions which were due prior to July 1, 1948 are not subject to the 1952 amendment for the reason that four years had already elapsed by the time the amend-

ment became effective and the Division had no time in which to assert such claims. Compare *State ex rel. Oklahoma Employment Security Comm. v. Eddie,* 195 *Okl.* 26, 154 *P. 2d* 763 *(Sup. Ct.* 1944), with *California Employment Stabilization Comm. v. Payne,* 31 *Cal. 2d* 210, 187 *P. 2d* 702 *(Sup. Ct.* 1948). With respect to those claims for the second calendar quarter of 1948 which· became payable on the last business day of July 1948, the respondent asserts that only 29 days remained after the effective date of the act in which to assert such claims and that such a brief period is an unreasonable time.

The appellants rely upon the fact that the statute was approved on May 16, 1952, but by its terms was not to become effective until July 1, 1952. Thus their contention is that the "Division had at least one month and 15 days of notice of the Legislature's intent to promote repose and speed the Division's collection of contributions."

Our attention has been directed to the following cases: *Mulvey v. City of Boston,* 197 *Mass.* 178, 83 *N. E.* 402 *(Sup. Jud. Ct.* 1908); *Steele v. Gann,* 197 *Ark.* 480, 123 *S. W. 2d* 520, 523, 120 *A. L. R.* 754 *(Sup. Ct.* 1939); *Smith v. New York Cent. R. Co.,* 122 *Ohio St.* 45, 170 *N. E.* 637 *(Sup. Ct.* 1930); *Vanderbilt v. Hegeman,* 157 *Misc.* 908, 284 *N. Y. S.* 586 *(Sup. Ct. Sp. Term* 1935); *Kozisek v. Brigham,* 169 *Minn.* 57, 210 *N. W.* 622, 49 *A. L. R.* 1260 *(Sup. Ct.* 1926); *State ex rel. Boynton v. Board of Education of City of Topeka,* 137 *Kan.* 451, 21 *P. 2d* 295 *(Sup. Ct.* 1933). And see Annotation, "Reasonableness of period allowed for existing causes of action by statute reducing period of limitation," 49 *A. L. R.* 1263 (1927); 120 *A. L. R.* 758 (1939).

The authorities referred to above all deal with the question of the reasonableness of prescribed periods of time for assertion of claims before such claims are barred by the retrospective application of the limitation period. Two considerations inhere in the cited cases. The first inquiry is typically a determination of whether the Legislature intended expressly or by implication that the interval between

the date of enactment and the effective date of the statute should be a period during which all claims pre-existing the statute should be perfected. Digested, the second consideration comes down to a question of whether under the particular facts and circumstances surrounding a given case an adequate opportunity is afforded for a party to assert pre-existent claims.

Thus, the inquiry in the instant case is whether the Legislature intended the 45-day interval between the passage and the effective date of the 1952 act to operate as a reasonable period of time in which the Division could assert all claims prior to July 1, 1948. The respondent contends that the Division had no knowledge or information in 1952 of appellants' liability because of their failure to report and that fact should "militate against their right to maintain the position taken by them." See *C. O. Baptista Films v. Cummins*, 9 *Ill. 2d* 259, 137 *N. E. 2d* 393 (*Sup. Ct.* 1956). The lack of knowledge on the part of the Division caused by a failure to file required reports is not dispositive of the present issue. The Legislature carefully studied the problems posed by stale unemployment contribution claims and must have been aware of the fact that ofttimes such claims were not asserted because the Division had no knowledge of their existence due to the failure to file reports. Nonetheless, the lawmakers imposed but one exception to the applicability of the bar, *i. e.*, "except in the event of fraud." See *State by Parsons v. United Steel Corp.*, 22 *N. J.* 341 (1956).

In the *Eureka* case, Justice Jacobs took judicial notice of the enormity of the respondent's task and the awareness of this fact by the Legislature. The Legislature was also aware of the fact that many claims pre-existing the 1952 amendment could only be uncovered by investigation. Therefore we conclude that it was not the legislative design to afford a 45-day interval of grace to the Division within which this task was to be completed. We further conclude that the contributions asserted for the second quarter of 1948, which by administrative regulation were payable on the last business day of July, were not barred in 1954.

Bearing in mind the investigative task confronting the Division, a 29-day period following July 1, 1952 was not a reasonable time in which claims might be asserted.

A further question is presented, however, by the Commissioner's decision. Having correctly concluded that claims for contributions which were due prior to July 1, 1948 were not barred in 1952, the Commissioner adopted the further position that such claims could be asserted at any time. This view was apparently predicated upon the theory that since the 1952 amendment did not retrospectively reach such claims, they were to be governed by the law existent at the time they arose which provided no period of limitation. We find that conclusion to be in error.

The purpose of the 1952 legislation was fully considered in the *Eureka* case where it was said:

"The four-year limitation amply evidenced the legislative view that it would be contrary to the public interest and unfairly burdensome to employers to continue subjecting them indefinitely to the assertion of old contribution claims. The considerations supporting this view were as applicable to pre-existing as to future claims and the terminology used by the Legislature tended to indicate that both types were to be included; thus the prescribed period of limitation began 'when the contributions *were due*'; and the fact that *L.* 1952, *c.* 187, did not take effect immediately and designated a single specific provision for prospective application lends some slight supporting weight." (21 *N. J.* at *page* 394)

The statute was intended as one of repose. The very evil which it was designed to prevent was the discovery and assertion of claims years after contributions were due. The rule that where no limitation period is in force at the time a cause of action accrues and such cause is already barred by the retroactive application of a later statute of limitations (or no reasonable time remains in which to assert a claim), then such claims may be asserted at any time, has been criticized as being in conflict with the basic purposes of limitation legislation. See *Sohn v. Waterson,* 17 *Wall* 596, 21 *L. Ed.* 737 (1873); Comment, 6 *Vanderbilt L. Rev.* 135, 136 (1952). The criticism of the rule has merit to it.

The rule is repugnant to repose and indiscriminate in application.

■■ Taking into consideration the purposes of the 1952 act, we hold that where no time remained after the passage of the 1952 amendment in which to assert pre-existent claims a reasonable time thereafter must be allowed for the purpose; such period in any event not to exceed four years. Thus by July 1, 1956, all claims arising prior to July 1, 1948 were barred. The instant case does not fall within this limitation because the claims were asserted by the Division in 1954, and we find that in this case the claim was asserted within a reasonable time.

We next consider the contention of the appellants that the certificate of overpayment issued to Gottesman and the letter from the Chief of Contributor's Service to Fleissner determined the amount due and could not later be revoked by a reversal of judgment absent legislative authority. We need not consider whether or under what circumstances administrative agencies are estopped from revising their prior determination in this jurisdiction. Compare *Lockwood v. Walsh*, 137 *N. J. Eq.* 445 (*Prerog.* 1946) with *Handlon v. Town of Belleville*, 4 *N. J.* 99, 106 (1950); *City of Bayonne v. Murphy & Perrell Co.*, 7 *N. J.* 298, 311 (1951); *Air-Way Branches, Inc., v. Board of Review*, 10 *N. J.* 609, 614 (1952); *Estelle v. Board of Education of Red Bank*, 14 *N. J.* 256, 261 (1954).

■ The authority to make refunds is vested in the Director under *N. J. S. A.* 43:21–14(*f*). In the instant case the certificate of overpayment and the letter were drawn by subordinate officials who had no authority by statute to bind the Division. When their determinations came before the proper official, the Director, he promptly reversed their action.

■ Where a statute provides authority for administrative determination in a particular official and such authority is exercised, not by him, but by subordinate officers in the agency who have no power to so act, he is not bound to accept these determinations but may, in his discretion, reverse them.

For the reasons stated in this opinion the determination below is affirmed.

No costs will be taxed to any party.

HEHER, J., concurring in result.

*For affirmance*—Chief Justice WEINTRAUB, and Justices HEHER, OLIPHANT, BURLING, JACOBS and FRANCIS—6.

*For reversal*—Justice WACHENFELD—1.