204 N.J. Super. 79 (1985)
497 A.2d 909
COOPER MEDICAL CENTER, PLAINTIFF,
v.
JOHN JOHNSON AND TOWNSHIP OF PENNSAUKEN, DEFENDANT/THIRD-PARTY PLAINTIFF,
v.
INSURANCE COMPANY OF NORTH AMERICA, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Law Division Special Civil Part, Camden County.
Decided January 29, 1985.
*81 James Greenberg for plaintiff (Greenberg, Shmerelson, Weinroth & Etish, attorneys).
John F. Strazzullo for defendant/third-party plaintiff Pennsauken Township.
K. Ruth Larson for third-party defendant Insurance Company of North America (Bernadette A. Duncan, attorney).
TALBOTT, J.S.C.
In this special civil part matter, plaintiff Cooper Medical Center (Cooper) sues defendants John Johnson and Township of Pennsauken (Pennsauken) for $5,000, the cost of medical services rendered to Johnson reduced to the maximum recoverable in this court. Pennsauken, as third-party plaintiff, seeks indemnification from its insurer, the Insurance Company of North America (INA) and also sues INA for the cost of its defense due to INA's failure to defend Pennsauken in this action. Cooper was unable to serve Johnson.
The facts of this case have been stipulated by the parties. On March 10, 1983, at approximately 1:30 a.m. Patrolman George T. Bowman of the Pennsauken police while responding to a burglary alert in a commercial building located in Pennsauken shot and injured Johnson. The township first-aid squad was summoned by police and transported Johnson to Cooper for treatment. The admission form prepared by Cooper indicates that Johnson was admitted as an emergency, non-custodial patient. The bill for medical services rendered by Cooper is not disputed as to its necessity or reasonableness.
The issues to be decided are whether the township is liable to Cooper for the cost of Johnson's medical treatment and whether INA breached its insurance contract by denying coverage under the terms of the policy and by failing to conduct Pennsauken's defense in this matter.
Cooper advances two theories as a basis for holding Pennsauken liable for Johnson's medical expenses. The first theory *82 relied upon is that Pennsauken entered into an implied contract to pay for Johnson's medical bills when the township police brought Johnson to the hospital for treatment.
It is well settled that a municipal corporation cannot be bound in contract, express or implied, unless the officer or employee has authority to enter into such a contract on behalf of the corporation. Giardini v. Town of Dover, 101 N.J.L. 444, 446 (Sup.Ct. 1925); Potter v. Metuchen, 108 N.J.L. 447, 451 (Sup.Ct. 1931). The Pennsauken police clearly do not have the authority to contract for the municipality. The authority to contract on behalf of a municipality is vested solely in the governing body of that municipality or in its legally established purchasing agents or purchasing board. See the Local Public Contracts Law, N.J.S.A. 40A:11-1 et seq. In addition, although it is generally conceded by authorities that a municipality can ratify a contract entered into by an unauthorized agent as long as the contract is one within its corporate powers and is not ultra vires, it was not stipulated that the alleged implied contract between Cooper and Pennsauken was ratified by the appropriate governing body. See Johnson v. Hospital Service Plan of New Jersey, 25 N.J. 134, 140 (1957); M & O Disposal Co., etc. v. Middletown Tp., 100 N.J. Super. 558, 567 (App.Div. 1967), aff'd 52 N.J. 6 (1968).
Not only are the police not authorized to contract for the municipality, but the procedures for the formation of a valid contract were not followed. Local public contracts law generally requires competitive bidding on any purchase, contract or agreement which exceeds $4,500. N.J.S.A. 40A:11-3. While professional services of the kind provided by Cooper are exempted from the bidding requirements, the statute requires that a resolution be passed by the municipal governing body to award the contract and that notice of that resolution be published and made available for public inspection. See N.J.S.A. 40A:11-5. Even in the case of an emergency affecting public health, safety or welfare, arguably the case here, a written *83 requisition must be filed and certified by the officer or director of the department affected by the emergency. N.J.S.A. 40A:11-6. None of the above described procedures were followed in the present case.
This court concludes that Pennsauken is not liable to Cooper in contract.
The second argument advanced by Cooper is that police custody of an injured suspect imposes a constitutional duty on the township to provide medical services and a corresponding duty to pay for those services.[1] Although this argument has not been addressed by the New Jersey courts, it was clearly rejected by the United States Supreme Court in City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983). Revere, similar to the present action, involved the shooting of a suspect by a member of the city police force. The suspect was shot while attempting to flee from the scene of a reported breaking and entering. The police summoned a private ambulance and the suspect was taken to the emergency ward of Massachusetts General Hospital. The hospital sued the City of Revere to recover the full cost of medical services rendered to the suspect.
The Supreme Court held that although the Due Process Clause requires that the responsible government or governmental agency provide medical care to individuals who have been injured while being apprehended by police, there is no corresponding constitutional duty to pay for them. 463 U.S. at 244, 103 S.Ct. at 2983, 77 L.Ed.2d at 611. The Court stated,
As long as the governmental entity ensures that the medical care needed is in fact provided, the Constitution does not dictate how the cost of that care should be allocated as between the entity and the provider of the care. That is a matter of State law. [Ibid.]
*84 A thorough search reveals that there is no case or statutory law in New Jersey which would impose the cost of medical services rendered upon the township.
To support its argument that Pennsauken is liable for Johnson's medical bills, Cooper directs this court to language in Revere in which the Supreme Court stated, "If, of course, the governmental entity can obtain the medical care needed for a detainee only by paying for it then it must pay." Ibid. The court is not persuaded by Cooper's reliance on this language because it is not part of the Court's holding but merely constitutes dicta.
Cooper argues that prior to Revere, the only relevant case is an early North Carolina Supreme Court decision, Spicer v. Williams, 191 N.C. 487, 132 S.E. 291 (Sup.Ct. 1926). While the North Carolina court did allow a provider of medical care to recover under facts similar to the present case, the plaintiff physician proceeded against the county board of commissioners who was required by state statute to provide and pay for the medical treatment of inmates confined in the county jail. The North Carolina Supreme Court held that a reasonable construction of these statutes extends that duty to a person in lawful custody who cannot be taken directly to jail because of his condition. 191 N.C. at 493, 132 S.E. at 294.
The North Carolina decision differs from this case in two important respects. First, while Johnson would have been taken to the Camden County jail had he not been shot and transported to Cooper for treatment, Cooper did not bring suit against Camden County. Secondly, there is no statute in New Jersey requiring a county to pay for the medical treatment of county jail inmates received in civilian hospitals.[2] While most suspects in custody or jail inmates are covered by some type of *85 medical insurance, it is up to the Legislature to determine who should bear the cost where there is no primary insurer or where the person treated cannot be served.
Since this court finds no basis on which the township can be held liable for the cost of Johnson's medical services, the indemnification issue had been rendered moot. However, the question of INA's breach of its insurance contract for failure to defend Pennsauken in this matter still remains.
It is the law of this State that an insurer must provide a defense for its insured where the allegations of the complaint, upon its face, fall within the risk insured against. Burd v. Sussex Mutual Ins. Co., 56 N.J. 383 (1970); Comorote v. Massey, et al., 110 N.J. Super. 124 (Law Div. 1970). A plain reading of the insurance policy issued by INA reveals that it is a general liability policy which does not cover the allegations contained in Cooper's complaint. This court, therefore, finds that INA was under no duty to defend against Cooper's claim.
NOTES
[1] The term constitution as used in this opinion refers to the Federal Constitution. The implications of the New Jersey Constitution are not addressed in this opinion as they were not briefed by the parties.
[2] In contrast, see N.J.S.A. 30:4-7 which allows the board of managers of a state penal institution to place a prison inmate in any hospital in the State and to pay for the treatment subject to the approval of the commissioner.