SMALL, J.T.C.
Black Whale, Inc., (Taxpayer) appeals from the October 26, 1992, determination of the Director of the New Jersey Division of Taxation (Director) that Taxpayer was liable for $41,539.01 plus interest in New Jersey Sales and Use Tax, N.J.S.A 54:32B-1 to -29, with respect to its use in New Jersey of a fishing and passenger boat, Black Whale III. Additionally, or in the alternative, Taxpayer seeks a refund of $20,160.49 sales and use tax paid in 1990 with respect to the use in New Jersey of a similar vessel, Black Whale IV.
*341 For the reasons expressed below I have determined that the Director’s assessment should be affirmed and Taxpayer’s refund request denied.
I.
Taxpayer argues that the use of both Black Whale III and IV are exempt from New Jersey use tax by virtue of N.J.S.A. 54:32B-8.12 which provides:
Receipts from sales or charges for repairs, alterations or conversion of ... vessels primarily engaged in commercial party boat (head boat) sport fishing and subject to annual inspection by the United States Coast Guard, and of govemmentally-owned ships, barges and other vessels and property used by or purchased for the use of such vessels, machinery, apparatus and equipment for fuel, provisions, supplies, maintenance and repairs (other than articles purchased for the original equipping of a new ship) are exempt from the tax imposed under the Sales and Use Tax Act.
[Emphasis added.]
Taxpayer also argues that the two vessels are exempt from tax because, in the alternative, their purchases were either casual sales or sales for resale. Finally, Taxpayer argues that the conduct of the Division of Taxation estops the Director from making an assessment with respect to Black Whale III. The Director disputes Taxpayer’s four arguments and asserts additionally that the refund claim is barred by the applicable statute of limitations and the decision in Vicoa, Inc. v. Director, Div. of Taxation, 166 N.J.Super. 496,400 A.2d 105 (App.Div.1979).
The parties initially filed cross motions for summary judgment which this court denied because it found that there were disputes with regard to material issues of fact which could not be resolved by examining affidavits. R. 4:46-2 and Judson v. Peoples Bank & Trust Co., 17 N.J. 67, 73-75,110 A.2d 24 (1954).
At trial the court heard three witnesses, Deborah Whitcraft and Audrey Whitcraft-Webby for plaintiff and the Division of Taxation investigator (investigator) who handled this matter for defendant. The testimony of the witnesses differed and to the extent that I have adopted one version of the facts or another, I have found greater credibility in the testimony of the witness whose version I have adopted.
*342 The Division of Taxation’s investigations with regard to Taxpayer involved four vessels: (1) a small boat (an Aquasport “six pack”) on which tax had not been paid or assessed, (2) Black Whale II, a boat on which tax has never been assessed, and (3) Black Whale III and (4) Black Whale IV, the boats on which the tax assessments are the subject of this appeal.
In November 1989 the investigator and a since-retired coworker paid a visit to the office of Taxpayer, which was located in the Beach Haven residence of Deborah Whitcraft, the principal owner and employee of Black Whale, Inc. He made inquiry about all four vessels, the small boat which he had seen at Taxpayer’s dock in Beach Haven, and Black Whales II, III, and IV, vessels he had not seen but about which he had found signs and brochures at the dock. During the course of a one and one-half hour interview, Ms. Whitcraft provided the investigator with information and documentation on the use of the three Black Whale vessels. Some of the documents were pulled from Taxpayer’s files by Ms. Whit-craft-Webby (Ms. Whitcraft’s sister and subordinate in the operations of Black Whale, Inc.) who was present at this initial November 1989 meeting. Although the investigator could not recall whether there was anyone present other than Ms. Deborah Whit-craft, I find from her testimony and the testimony of Ms. Whit-craft-Webby that Ms. Whitcraft-Webby was present. Among the documents given to the investigator at that initial meeting were copies of the contract for Black Whale IV with Trump’s Castle hotel (D-2), various purchase invoices for the boats and supplies, and coast guard certificates of documentation and certification. The June 1987 contract with Trump’s castle relating to Black Whale III (D-l) was not given to the investigator at that time. I find that at the time of the November 1989 interview, the investigator had a copy of a brochure (D — 5) relating to the daily cruises of Black Whale III to Trump’s Castle in Atlantic City or other similar written material. The investigator testified that he had no brochures at the time of the November 1989 interview. Ms. Whitcraft testified that the pretext for the investigator’s unannounced visit and interview was a sighting of the Aquasport and *343 the observation of signs at the dock as well as brochures, which were found in a weather protected box at the dock.
Subsequent to the November 1989 visit, Ms. Whitcraft and the investigator continued telephone discussions, approximately twelve over the period from November 1989 to February 1990, about the taxability of Black Whales II, III, and IV.[1] Ms. Whitcraft also periodically supplied the investigator with additional written materials. During the course of their conversations, Ms. Whitcraft and the investigator agreed that tax would be assessed on Black Whale IV and not on Black Whales II and III. Pursuant to that agreement reached in their phone conversations of January 8 and 9,1990, Ms. Whitcraft sent the investigator a letter on January 10, 1990. Although the investigator denies having received the January 10, 1990, letter, Ms. Whitcraft sent another letter dated January 19, 1990, which differed from the January 10th letter by the addition of two brief sentences. I find that this January 19, 1990, letter was the result of a discussion between the investigator and Ms. Whitcraft subsequent to his receipt of the January 10th letter.
The facts as recited in the January 19, 1990, letter would support the agreement that the Black Whale IV be taxed and the Black Whales II and III not be taxed.
In furtherance of the agreement reached by the investigator and Ms. Whitcraft, the investigator wrote to Ms. Whitcraft on February 13,1990:
After careful consideration it has been determined that Black Whale II and Black Whale III do qualify as tax exempt purchases under N.J.S.A. 54:32B-8.12. Therefore, no Sales and Use Tax Assessment is hereby made against these vessels. The purchase and use of Black Whale IV does not qualify as a tax exempt purchase under the scope of N.J.S.A. 54.-32B-8.12.
The letter then went on to quantify the assessment against Black Whale IV. Pursuant to the agreement, Ms. Whitcraft submitted a check in full payment of the tax of $15,600 on May 11, 1990, and *344 requested an abatement of penalty and interest. On May 30, 1990, the investigator’s supervisor wrote a letter granting the abatement of penalty and interest. On or about June 18,1990, the full amount of abated interest was paid. One month later, on July 18, 1990, Ms. Whitcraft received a letter from the Division of Taxation which began:
Information compiled by the Division of Taxation indicates that the activity engaged in by the Black Whale III does not entitle it to the sales tax exemption granted under N.J.SA. 54:32B-8.12.
[Emphasis omitted.]
and went on to calculate an assessment of $41,539.02 plus penalty and interest.
Between February 13,1990, and July 18, 1990, (the dates of the two assessment letters) nothing had changed with respect to the operation of Black Whale III. It appears that in the Spring and early Summer of 1990 Division of Taxation employees had observed Black Whale III arriving at Atlantic City and depositing passengers who appeared to be day trippers rather than fisherman. Additionally, it appears that during that period the Division of Taxation had obtained from Trumps’s Castle a copy of the June 1987 contract between Taxpayer and Trump’s Castle.relating to Black Whale III.
The investigator testified that from 1986 to 1993 he was employed exclusively in the Division’s “Boat Program” in which he became a specialist in the sales and use taxation of boats. During the investigation, the principal discussions were conducted between the investigator and Ms. Whitcraft although Ms. Whitcraft retained a lawyer, Mr. Rizutto.
Based on the testimony and other documentary evidence I have concluded that during the relevant time periods which are the subject of this assessment, from the purchase of the boats through mid-summer of 1990, their use did not change. Black Whale IV was used to provide cruises for Trump Castle out of Atlantic City. Black Whales II and III were used for head boat fishing, charter cruises, and bay cruises and Black Whale III was used for transportation of passengers between Beach Haven and Atlantic *345 City. During the winter months Black Whales II and III were used for head boat fishing charters and cruises in Florida. Ms. Whitcraft testified that, collectively, Black Whales II and III were used 70% to 75% of the time in fishing activities in New Jersey and Florida.
From examination of the brochure and the contract relating to Black Whale Ill’s transportation of passengers between Beach Haven and Atlantic City it would appear that while in New Jersey it was predominantly, if not exclusively, used in that service. Nevertheless, I find based on Ms. Whitcraft’s testimony that in Florida it was predominantly used in head boat fishing and that it spent approximately one half of the year in Florida.
II.
Resolution of this case requires the court to deal with both procedural and substantive issues. With respect to the assessment based on the use of Black Whale IV, if the refund claim is barred by the statute of limitations, then I need not determine if its use was taxable. With respect to the assessment based on the use of Black Whale III, if its use is not subject to tax, I need not deal with Taxpayer’s estoppel arguments. For the reasons expressed below I hold that the refund claim for the tax paid with respect to Black Whale IV is barred by the statute of limitations, that the use of Black Whale III is subject to tax, and that the Director was not barred from making an assessment against Black Whale III. Although not essential to my determination I find that the use of Black Whale IV was subject to tax.
A.
I turn first to whether plaintiff can seek a refund with respect to the tax it paid on Black Whale IV.
The assessment against Black Whale IV was made by letter dated February 13, 1990, and paid by check on May 11, 1990. A taxpayer’s right to seek refunds under the Sales and Use Tax Act *346 is governed by N.J.S.A. 54:32B-20(a) (1966) (amended 1992)[2] which provides that a refund claim may be made within two years of the payment of a tax. However, N.J.S.A 54:32B-20(b) provides:
A person shall not be entitled to a revision, refund or credit under this section of a tax, interest or penalty which had been determined to be due pursuant to the provisions of [N.J.S.A 54:32B-19] where he has had a hearing or an opportunity for a hearing as provided in said section or has. failed to avail himself of the remedies therein provided. No refund or credit shall be made of a tax, interest or penalty paid after a determination by the director made pursuant to [N.J.S.A. 54:32B-19] unless it be found that such determination was erroneous, illegal or unconstitutional or otherwise improper, pursuant to law, in which event refund or credit shall be made of the tax, interest or penalty found to have been overpaid.
and N.J.S.A 54:32B-19 (1966) (amended 1992)[3] provides:
If a return required by this act is not filed, or if a return when filed is incorrect or insufficient, the amount of tax due shall be determined by the director from such information as may be available. If necessary, the tax may be estimated on the basis of external indices, such as stock on hand, purchases, rental paid, number of rooms, location, scale of rents or charges, comparable rents or charges, type of accommodations and service, number of employees or other factors. Notice of such determination shall be given to the person liable for the collection or payment of the tax____ [S]uch determination shall finally and irrevocably fix the tax unless the person against whom it is assessed, within 30 days after giving of notice of such determination, shall apply to the director for a hearing, or unless the director of his own motion shall redetermine the same. After such hearing the director shall give notice of his determination to the person against whom the tax is assessed.
N.J.S.A 54:32B-21 provides:
(a) Appeal to tax court. Any aggrieved taxpayer may, within 90 days after any decision, order, finding, assessment or action of the Director of Taxation made pursuant to the provisions of this act, appeal therefrom to the tax court in accordance with the provisions of the State Tax Uniform Procedure Law, R.S. 54:48-1 et seq.
(b) Appeal exclusive remedy of taxpayer. The appeal provided by this section shall be the exclusive remedy available to any taxpayer for review of a decision of the director in respect of the determination of the liability of the taxpayer for the taxes imposed by this act.
Thus, although a refund claim can be made within two years of the payment of a tax, if the payment is made after an assessment *347 by the Director the two year refund provision is inoperative. In that case a taxpayer can only protest the assessment by asking for a hearing with the Director of the Division of Taxation within 30 days (now 90 days) or filing an appeal with the Tax Court within 90 days of the date of the assessment. See Don Dan Constr. Co. v. Director, Div. of Taxation, 14 N.J.Tax 569 (Tax 1995). Since the assessment was made against Black Whale IV on February 13, 1990, the 90-day period expired about the time that Taxpayer paid the tax (May 11, 1990). See Vicoa, supra, 166 N.J.Super. at 502-03, 400 A.2d 105 (dealing with a virtually identical statutory pattern under the Corporation Business Tax N.J.S.A. 54:10A-19.2(a).[4]) By the time the Division reversed its earlier position and made an assessment against Black Whale III (July 18, 1990) the period to protest the assessment against Black Whale IV had expired.
One might argue that there was a plan by the Director to lure Taxpayer (by indicating Black Whale III was exempt) into not protesting and paying the assessment against Black Whale IV and once the protest period had expired and the tax had been paid reversing himself or herself and making an assessment based on the use of Black Whale III. Nothing in the record supports a finding of a conscious effort by the Director to that end. What happened was that the Director’s agent made a deal. See discussion infra part II.C. Subsequent to the making of the deal the Director discovered new facts, re-examined her position, and decided to make an assessment with respect to Black Whale III. Whether the Director could change her position is examined below. See discussion infra part II.C. What is clear is that the time to protest the assessment against Black Whale IV expired before Taxpayer filed a protest. Statutory deadlines for filing appeals may not be relaxed. F.M.C. Stores Co. v. Morris Plains, Bor. 100 N.J. 418, 424-25, 495 A.2d 1313 (1985), aff'g 195 N.J.Super. 373, 381, 479 A.2d 435 (App.Div.1984). The assessment with *348 respect to Black Whale IV must be affirmed because a timely protest or appeal was not filed.
I am not persuaded that the failure of the Director to inform Taxpayer of its appeal rights in the assessment notice results in an extension of the statute of limitations. Although the better practice would have been to give such notice[5] failure to do so was not fatal in 1990. See Peoples Express Co. v. Director, Div. of Taxation, 10 N.J.Tax 417, 426 (Tax 1989). But see N.J.S.A. 54:50-6 as amended by L.1992, c. 175, § 155 and N.J.S.A. 54:48-6 added by L.1992, c. 175, § 8 (requiring that after July 1, 1993, notices of assessment must provide information with respect to the appeal deadline). Richardson v. Director, Div. of Taxation, 14 N.J.Tax 356, 360 (Tax 1994).
With respect to a protest of the assessment against Black Whale IV, the time to request a hearing with the Director or take an appeal to the Tax Court expired before Taxpayer took any action. Accordingly, Taxpayer’s claim for a refund is untimely.
B.
I turn next to whether the use of Black Whale III and the use of Black Whale IV by Taxpayer, are subject to New Jersey Sales and Use Tax. In general, the sale and use of tangible personal property in New Jersey is subject to tax unless specifically exempt by statute. N.J.S.A. 54:32B-3(a); N.J.S.A. 54:32B-6. N.J.S.A 54:32B-8.12, quoted above, exempts head boats (boats which are used principally for fishing by people who are charged by the head for the privilege of fishing off the boat) from the tax. The evidence adduced at trial indicates that Black *349 Whale III is used for head boat fishing in Florida for part of the year. Black Whale III was used under contract to Trump to ferry passengers between Beach Haven and Atlantic City and Black Whale IV was under contract to Trump’s Castle to provide for sightseeing trips, day charters, and other cruises out of the Frank Farley Marina in Atlantic City. The evidence adduced at trial with respect to the amount of time that each boat was used in various activities in Florida and New Jersey or the amount of revenue with respect to each of these activities was not precise. Ms. Whitcraft indicated that 70% to 75% of the use of Black Whales II and III combined was head boat fishing activity. An allocation could not be made between Black Whale II and Black Whale III, nor could an allocation be made between activity in Florida and activity in New Jersey. Based on the evidence, I have concluded that the predominant use of both Black Whale III and Black Whale IV in New Jersey was not for head boat fishing. It is more questionable as to whether the predominant use of Black Whale III in both Florida and New Jersey was for head boat fishing. I further find that when there is mixed use, both exempt and non-exempt, in the absence of some other statutory or regulatory provision (i.e. some exempt use, exclusive exempt use, or predominant exempt use), a predominant use test is appropriate. See KSS Tramp. Carp. v. Director, Div. of Taxation, 9 N.J.Tax 273, 279 (Tax 1987) (imposing a predominant use test with regard to a similar statute exempting airplanes when utilized by an air carrier), aff'd, 11 N.J.Tax 89 (App.Div.), certif. denied, 118 N.J. 184, 570 A.2d 952 (1989). I note that N.J.S.A. 54:32B-8.12 requires that to qualify for its exemption the vessels must be “primarily” engaged in the exempt activity.
Exemptions from taxation are an exception to the principle that all property must bear its fair share of the public burden of taxation. Accordingly, the burden of proving that an exemption applies is on the taxpayer. Princeton Univ. Press v. Princeton Bor., 35 N.J. 209, 214, 172 A.2d 420 (1961). See also Fedway Assocs., Inc. v. Director, Div. of Taxation, 14 N.J.Tax 71, 77 (Tax 1994), aff'd o.b., 282 N.J.Super. 129, 659 A.2d 536 (App.Div.), certif. *350 denied, 142 N.J. 573, 667 A.2d 190 (1995). Chester Bor. v. World Challenge, Inc., 14 N.J.Tax 20, 27-28 (Tax 1994). I find that the Taxpayer has not met its burden of proof in this case. I note that the evidence is clear that the predominant use of Black Whales III and IV in New Jersey was not for head boat fishing. Since it is the use of boats in New Jersey which subjects Taxpayer to tax, it is the use of the boats in New Jersey which must fall within the specific statutory exemption.[6]
I hold that both Black Whale III and Black IV are subject to the New Jersey Sales and Use Tax because 1) their predominant use in New Jersey was not for head boat activities, 2) Black Whale III was in New Jersey approximately half of the year, and 3) Taxpayer failed to prove that even when the combined use of Black Whale III in New Jersey and Florida was taken into account, its predominant use was as an exempt head boat.[7] Other configurations of partial use within and outside of New Jersey for head boat and non-head boat activities might result in a different conclusion.
*351 I find that the contracts between Trump’s Castle and Taxpayer were not leases and thus both Black Whale III and IV were not purchases for resale with the intent to lease the boats. In fact, as Ms. Whitcraft testified, at least outside of New Jersey, much of the use of the Black Whale III was for head boat fishing. The purchase of a boat to be used in head boat fishing activities is not a sale for resale. N.J.SA 54:32B-2(e). Additionally, the casual sale exemption found in N.J.SA 54:32B-8.6 by its own terms does not apply to the purchase and use of Black Whale IV. Taxpayer was in the business of buying boats for use in its operations.
C.
Finally, I turn to whether the Director is estopped from making an assessment against Black Whale III after the February 13, 1990, letter in which the Division indicated that Black Whale TV was taxable and Black III was not. Under anyone’s common understanding of what a contract is, there was a contract between Ms. Whitcraft and the investigator. After extensive investigations and negotiations they agreed that Black Whale II and Black Whale III would be exempt from taxation and Black Whale IV would be subject to taxation. The January 10 and January 19 letters from Ms. Whitcraft to the investigator were part of the negotiations. The Division’s determination letter of February 13 that Black Whale III and Black Whale II would be exempt and Black Whale IV would be subject to tax was an offer which was accepted by Taxpayer’s May payment with respect to Black Whale IV and the request for the abatement of penalty and interest. The Division’s May 30 letter abating penalty and interest sealed the contract. The July letter of assessment against Black Whale III was a renunciation of the deal that had been made.
What apparently happened between the winter and July was that employees of the Division of Taxation, other than the investigator, had observed Black Whale III engage in other than head boat activities. This would have brought into question the correctness of the decision not to impose a tax on Black Whale III and I *352 presume that after discussions within the Division of Taxation it was determined that Black Whale III was subject to tax. The investigator also came into possession of the contract with respect to Black Whale III with Trump’s Castle, a contract which he did not have at the time that he made the determination that Black Whale III was not subject to tax.
As indicated above, it is my determination and I presume the Division’s determination subsequent to its February letter that Black Whale III was subject to tax. In a normal commercial relationship there would have been a done deal and the investigator operating with apparent authority of his superior would have bound his superior not to renege on the deal. See generally Seacoast Realty Co. v. West Long Branch Bor., 14 N.J.Tax 197, 203 (Tax 1994). Taxpayer argues that in reliance on the deal it had given up its opportunity to protest the assessment against Black Whale IV. I have determined that the assessment against Black Whale IV was consistent with the Sales and Use Tax Act and not exempt under N.J.S.A 54:32B-8.12. Thus, the protest of that assessment would not have been successful. Nevertheless, it is clear that Taxpayer felt that it had been dealt with unfairly. From the Director’s point of view Taxpayer had withheld information. I note that the investigator was a specialist in the New Jersey sales taxation of boats. He could have asked any number of questions as he knew more about the taxation of boats than Taxpayer. It does not appear that any question that was asked or any document demanded was ever refused. He may just have ended his investigation before it was complete. Although within the commercial context the Director would have been estopped from changing his position in taxing Black Whale III, I find that the law as it applies to the Director is different.
The doctrine of apparent authority does not apply to agents of the state. Seacoast Realty, supra, 14 N.J.Tax at 203 n. 2. Closing agreements and compromises may be made by the Division of Taxation subject to very strict statutory provisions. *353 N.J.S.A. 54:53-1 to -16.[8] The forms under which the agreements may be applied for are prescribed and the Director must specifically authorize in writing and approve the agreement. See N.J.A.C. 18:33-1.4 to -1.6. It is clear that the investigator had no such authority. Thus, the investigator had no authority to enter into the settlement. Even if there was a contract it was unenforceable. See Saint Barnabas Medical Ctr. v. Essex County, 111 N.J. 67, 77-79, 543 A.2d 34 (1988) holding that where statute (requires that contract with public entity be made in a certain way, it impliedly forbids other methods. No contract can be implied if statutory provisions have not been complied with.); Hudson City Contracting Co. v. Jersey City Incinerator Auth., 17 N.J. 297, 111 A.2d 385 (1955); Cooper Medical Ctr. v. Johnson, 204 N.J.Super. 79, 82-83, 497 A.2d 909 (Law Div.1985), aff'd, 208 N.J.Super. 38, 504 A.2d 1199 (App.Div.1986).
Equitable estoppel does not apply against the Division of Taxation when a taxpayer has relied on a previous position of the Division of Taxation. Airwork Serv. Div. v. Director, Div. of *354 Taxation, 97 N.J. 290, 296-99, 478 A.2d 729 (1984), cert. denied, 471 U.S. 1127,105 S.Ct. 2662, 86 L.Ed.2d 278 (1985). The Division cannot be bound by the unauthorized acts of its employees. The statute authorizing closing agreements and compromises by the Division of Taxation, N.J.S.A. 54:53-1 to -16, is clear in terms of what is required to obtain an enforceable compromise or closing agreement. The investigator neither had the authority to do that nor were the procedures required by that statute complied with.
The actions of the Division which the Taxpayer relied on in this ease are different from those in Airwork Serv. Div., supra. In this case the Director gave specific advice to Taxpayer and told Taxpayer in writing that Black Whale III was not subject to tax. At a period subsequent to the period with which this case is concerned, i.e. after July 1, 1993, the effective date of the Taxpayers’ Bill of Rights, such a representation by the Director or the Director’s agent in writing would result in the automatic abatement of penalty and interest with respect to a changed assessment. N.J.S.A 54:49-11(b). Nevertheless, even this improper advice to a taxpayer would not prevent the Division from changing its mind and assessing a tax after indicating that a transaction was exempt. All the Taxpayers’ Bill of Rights would do in this situation is force an abatement of penalty and interest. N.J.S.A 54:49-11. Thus, by implication,. the Taxpayers’ Bill of Rights looks unfavorably on, and provides some relief for, a taxpayer who has received advice such as the investigator’s and is subsequently assessed in contravention of that advice. But it does not void the assessment. “In any event, we find the application of the principles of estoppel particularly inappropriate when the collection of taxes by a public body is involved, except in unusual circumstances. No such circumstances exist here.” N.J. Turnpike Auth. v. Washington Tp., 137 N.J.Super. 543, 552, 350 A.2d 69 (App.Div.1975), aff'd o.b., 73 N.J. 180, 373 A.2d 652 (1977) (citations omitted).
In theory a party can be estopped from taking a position contrary to one previously taken. Schmidt v. Schmidt, 220 N.J.Super. 46, 52, 531 A.2d 385 (Ch.Div.1987). However, estoppel *355 is rarely invoked against public entities. State, Dept. of Envtl. Protection and Energy v. Dopp, 268 N.J.Super. 165, 175-176, 632 A.2d 1270 (App.Div.1993). In practice, taxing authorities in New Jersey have never been estopped, either by their spoken words, their written words, or their actions, from imposing a tax. A review of those cases in which a taxpayer has asserted that a taxing authority is estopped from imposing a tax is illuminating.
Estoppel has not barred the imposition of a tax where a taxing authority has by inaction failed to impose a tax in prior years or on a prior transaction. Airwork, supra, 97 N.J. at 296-99, 478 A.2d 729; Bayonne v. Murphy & Perrett Co., 7 N.J. 298, 311-312, 81 A.2d 485 (1951); N.J. Turnpike Authority v. Washington Township supra, 137 N.J.Super. at 551-552, 350 A.2d 69; East Orange v. Livingston Tp., 102 N.J.Super. 512, 521-22, 246 A.2d 178 (Law Div.1968), aff'd o.b., 54 N.J. 96, 253 A.2d 546 (1969).
Estoppel has not barred the imposition of a tax which a governmental representative has verbally indicated by words or writing is not applicable, or would be imposed differently than eventually assessed. See, e.g., Rubenstein v. Upper Pittsgrove Tp., 12 N.J.Tax 494, 499-501 (Tax 1991); Kearny v. Director, Div. of Taxation, 11 N.J.Tax 232, 236 (Tax 1990); L.S. Village, Inc. v. Lawrence Tp., 8 N.J.Tax 287, 296-97 (Tax 1985); aff'd o.b., 8 N.J.Tax 327 (App.Div.1986); New Jersey Dental Serv. Plan, Inc. v. Baldwin, 7 N.J.Tax 421, 430 (Tax 1985), aff'd o.b., 8 N.J.Tax 335 (App.Div.1986); Saint Michael’s Passionist Monastery v. Union City, 5 N.J.Tax 415, 418-419 (Tax 1983); Armstrong v. Director, Div. of Taxation, 5 N.J.Tax 117, 135-36 (Tax 1983), aff'd o.b. 6 N.J.Tax 447 (App.Div.1984); Mayfair Holding Corp. v. North Bergen Tp., 4 N.J.Tax 38, 41 (Tax 1982); Gehin-Scott v. Willingboro Tp., 176 N.J.Super. 642, 647-48, 424 A.2d 481 (Tax 1980).
Taxing authorities have been permitted to impose taxes contrary to general written statements by the taxing authority. See, e.g., Airwork, supra, 97 N.J. at 296-99, 478 A.2d 729; Gale Builders, Inc. v. Hunterdon County Bd. of Taxation, 8 N.J.Tax 16, 22-23 (Tax 1985).
*356 Finally, in a case very similar to the instant matter, our Supreme Court has permitted the State to revise a specific written determination of a state official, when that state official was wrong and had no authority to write that a refund was due. Gottesman v. Division of Employment Sec., 25 N.J. 145, 135 A.2d 500 (1957). ‘Where a statute provides authority for administrative determination in a particular official and such authority is exercised, not by him, but by subordinate officers in the agency who have no power to so act, he is not bound to accept their determination but may, in his discretion, reverse them.” Id. at 154,135 A.2d 500.
Thus, I conclude that the Division is not bound by the February 13 letter of the investigator because it was not authorized. I find that a taxpayer accustomed to commercial dealing might have felt that it had a contract with the Division. Despite this seemingly “unfair” result, my findings are that Taxpayer really gave up very little in paying the tax on Black Whale IV since both Black Whale III and Black Whale IV were subject to tax.
In its dealings with taxpayers, the government should “turn square corners.” F.M.C. Stores Co. v. Morris Plains Bor., 100 N.J. 418, 426, 495 A.2d 1313 (1985). It is clear that in this case it did not. The Division of Taxation, perhaps, made a premature determination with respect to Black Whale III. When confronted with additional facts the Division revised that determination. Taxpayer knew or could have known, as it did have advice from counsel, that contracts, deals, or closing agreements with the Division of Taxation such as the one that it apparently entered into require a greater formality. In fact, there was statutory authorization for a closing agreement which could have been complied with. Although Taxpayer may feel that it has been unfairly treated, the bottom line is that under the facts in this case, the use of both boats in New Jersey made them subject to, and not exempt from, New Jersey Sales and Use Tax. There was no need on the part of the Division to indicate that Black Whale III was not subject to tax in order to collect tax with respect to Black Whale IV.
*357 In this case I hold that specific written advice to a specific taxpayer informing it that a transaction is not taxable will not estop the Director from subsequently taxing that transaction. The law is that the Director will only be estopped from making an assessment contrary to his or her prior written representation if a compromise or closing agreement is executed with the statutorily prescribed formalities. N.J.S.A. 54:53-1 to -16.
For the foregoing reasons the assessment of the Director with respect to the purchase and use of Black Whale III is affirmed. Taxpayer’s request for a refund with respect to sales tax paid on the purchase and use of Black Whale IV is denied. The court will enter an appropriate order.

 There was never a dispute with regard to the taxation of the Aquasport. Tax was assessed by a letter dated November 20, 1989, and appears to have been paid without protest (P-18).

 N.J.S.A. 54:32B-20(a) was amended by the Taxpayers' Bill of Rights, L.1992, c. 175, § 32, to provide for a four year refund period.

 N.J.S.A. 54:32B-19 was amended by the Taxpayers' Bill of Rights, L.1992, c. 175, § 31, to provide for a 90 day rather than 30 day period to request a hearing.

 Now N.J.S.A. 54:10A-19.2. See L. 1983, c. 36, § 23 (eff. January 26, 1983).

 "Although not mandatory, considerate dealing by the administrative body suggests that such notice might as well apprise the party sought to be bound that he has a right to an administrative appeal or hearing if such exists, together with the time within which such action must be taken.” De Nike v. Board of Trustees, Employees’ Retirement Sys. of NJ., 34 N.J. 430, 435, 170 A.2d 12 (1961). In fact, in assessing the Aquasport, the Division had given such notice to plaintiff. However, the February 13, 1990, assessment notice did not contain that information.

 The legislative intent of the statute was that (1) in order to benefit from the exemption boats would be primarily engaged in commercial fishing or party boat fishing and (2) the exemption was for the purpose of promoting and expanding the commercial fishing industry in New Jersey.
This bill is designed to exempt from the sales tax the sale of vessels primarily engaged in commercial fishing or shell fishing or in commercial party boat sport fishing.
The well-being of the fishing industry is essential to the economic health of the State. This bill will relieve those engaged in commercial fishing from a heavy tax burden which would be imposed upon the acquisition of new vessels. The bill is intended to assist the State's efforts to promote the expansion of the commercial fishing industry.
[Statement to Assembly Bill No. 911 (April 28, 1990), (Assembly Bill No. 911 was enacted as L. 1981, c. 218, and became N.J.S.A. 54:32B-8.12).]

 There was no specific evidence, either time logs or accounting records, which would allow this court to determine precisely how much time each boat spent in New Jersey in head boat activities and how much time in other activities, and how much time each boat spent in Florida in head boat activities and how much time in non-head boat activities. Neither could the court determine how much revenue was derived from each boat in each state in each activity.

 N.J.S.A. 54:53-5. Request for closing agreement; time for submission for prior taxable period, forms; procedure
A request for a closing agreement which relates to a prior taxable period may be submitted at any time before a case with respect to the tax liability involved is filed with the tax court. All requests for closing agreements shall be submitted on forms prescribed by the Director of the Division of Taxation. The procedure with respect to applications for entering into closing agreements shall be pursuant to such rules as may be promulgated from time to time by the Director of the Division of Taxation in accordance with the provisions of this act.
N.J.S.A. 54:53-10. Offers in compromise; submission; forms; remittance or deposit
Offers in compromise shall be submitted on forms prescribed by the Director of the Division of Taxation and shall be accompanied by a remittance representing the amount of the compromise offer, or a deposit if the offer provides for future installment payments. If the final payment on an accepted offer is contingent upon the immediate or simultaneous release of a tax lien in whole or in part, such payment must be in cash, or in the form of a certified, cashier’s or treasurer’s check drawn on any bank or trust company incorporated under the laws of the United States or any State, Territory or possession of the United States, or by a United States postal, bank, express or telegraph money order.