LASSER, P.J.T.C.
In this action KSS Transporation Corp. (KSS) challenges a use tax assessment imposed by the Director of the Division of Taxation on its purchase of an airplane. KSS contends: (1) the purchase and use of the aircraft are exempt under N.J.S.A. 54:32B-8.35, and if not exempt under this statute, then (2) the imposition of a use tax on its purchase of the aircraft is violative of the Commerce Clause of the United States Constitution. The case was submitted for decision under R. 8:8-1(b) on stipulated facts.
KSS, a New Jersey corporation with its principal place of business at the Morristown Airport in New Jersey, is a wholly-owned subsidiary of Webcraft Technologies, Inc. (Webcraft), a subsidiary of Beatrice Companies (Beatrice). On January 15, 1985, KSS purchased a 69 Dassault/Sud aircraft from the County Line Cheese Co. of Milwaukee, Wisconsin for $1,000,-000.
KSS took delivery of the aircraft at Wilmington, Delaware on January 15, 1985, and the aircraft was immediately flown to Seattle, Washington via Chicago, Illinois on Webcraft business with Webcraft personnel aboard. On the following day, January 16, 1985, the aircraft was flown to Chicago, Illinois on Webcraft business and then to New Jersey. The aircraft is based at Morristown Airport in New Jersey, returns there between flights and is hangared there. The aircraft’s flight log indicates that the aircraft has been used, regularly and exclusively, in transporting property and passengers, who are primarily executives of Webcraft and other Beatrice subsidiaries, across state lines and national boundaries. During the period January 15 through November 25, 1985, almost every flight of the aircraft occurred between airports in different states. Only six flights involved successive take-offs and landings at two airfields within New Jersey, and on five of those six occasions, the landings constituted part of an interstate flight. On the sixth occasion, the aircraft was returned to the Morristown *276 Airport from Newark, New Jersey following the termination of an interstate flight in Newark.
KSS acquired the aircraft with a view toward providing charter services to Webcraft, other Beatrice subsidiaries and unrelated third parties. In connection therewith, KSS has applied for a “Part 135 Air Taxi Commercial Operators Certificate,” the receipt of which will enable KSS to hold itself out as a “for-hire” air carrier.[1] KSS’s application is currently pending before the Federal Aeronautics Administration (FAA). During the pendency of its application, KSS has, on numerous occasions, provided charter service, not only to Webcraft and other Beatrice units but also to unrelated third party charter users. When providing charter services to other Beatrice units and unrelated third parties, KSS bills all users other than its direct parent, Webcraft, for the cost of the flights.
By letter dated November 25, 1985, the Director rendered a final determination imposing an assessment of use tax, interest and penalty in the amount of $72,000. No other state has imposed a sales or use tax assessment on the purchase or use of the aircraft by KSS. Following the posting of an appeal bond, KSS instituted this action for review of the Director’s final determination.
I.
KSS contends that its purchase of the aircraft meets the three requirements for exemption set forth in N.J.S.A. 54:32B-8.35. It claims: (1) it is an air carrier as defined by the Civil Aeronautics Board or the Code of Federal Regulations; (2) it has its principal place of operations in New Jersey and (3) it utilizes the aircraft in interstate, foreign or intrastate air commerce.
The Director contends that KSS is not an air carrier because it was not certified by the Civil Aeronautics Board and there *277 fore was not authorized to engage in air transportation as required by 49 U.S.C.A. § 1371(a). The Director argues that, without such certification, KSS is not entitled to exemption under § 8.35, to which KSS responds that the New Jersey exemption statute requires only that it conform to the definition of air carrier as set forth in the federal statute and regulations, not that it be licensed under the federal statute and regulations.
II.

The New Jersey Statutory Exemption Issue.

The New Jersey Sales and Use Tax Act imposes a tax on:
(a) The receipts from every retail sale of tangible personal property, except as otherwise provided in this act. [N.J.S.A. 54:32B-3]
Taxpayer contends that it is exempt from this tax under N.J. S.A. 54:32B-8.35, which provides:
Receipts from sales of aircraft and repairs thereto including machinery or equipment to be installed on such aircraft and the replacement parts therefor when utilized by an air carrier as defined by the Civil Aeronautics Board or the Code of Federal Regulations having its principal place of operations within the State and engaging in interstate, foreign or intrastate air commerce are exempt from the tax imposed under the Sales and Use Tax Act.
This exemption became effective January 1, 1979.[2]
The Director denied the claim for exemption, stating: “The purchase of an aircraft for company use is not encompassed in the subject exemption N.J.S.A. 54:32B-8.35. The exemption is limited to an air carrier engaging in an air commerce business under New Jersey Law.” The essence of this issue rests with the requirement that the aircraft be utilized by an air carrier as defined by the Code of Federal Regulations or the Civil Aeronautics Board.
The term “air carrier” is defined in the statute as follows:
*278 Air carrier means any citizen of the United States who undertakes, either directly or indirectly or by a lease or by any other arrangement to engage in air transportation. [49 U.S.C.A. § 1301(3); see also 14 C.F.R § 1.1]
“Air transportation” is defined as “interstate, overseas or foreign air transportation or the transportation of mail by aircraft.” 49 U.S.C.A. § 1301(10); 14 C.F.R. § 1.1. Interstate, overseas or foreign air transportation is defined as “the carriage by aircraft of persons or property as a common carrier for compensation or hire or the carriage of mail by aircraft....” 49 U.S.C.A. § 1301(24); see also 14 C.F.R. § 1.1.
The term “common carrier” is not defined in either the federal statute or the regulation. However, an FAA advisory circular dated April 24, 1986 entitled “Private Carriage vs. Common Carriage of Persons or Property” states:
A carrier becomes a common carrier when it "holds itself out” to the public, or to a segment of the public, as willing to furnish transportation within the limits of its facilities to any person who wants it. Absence of tariffs or rate schedules, transportation only pursuant to separately negotiated contracts, or occasional refusals to transport, are not conclusive proof that the carrier is not a common carrier. There are four elements in defining a common carrier; (1) a holding out of a willingness to (2) transport persons or property (3) from place to place (4) for compensation. This “holding out” which makes a person a common carrier can be done in many ways and it does not matter how it is done. [AC No. 120-12A]
It has been stipulated that since its acquisition in January 1985, the aircraft has been used regularly and exclusively in transporting property and passengers, primarily executives of Webcraft and other Beatrice subsidiaries. In December 1986, a part 135 Air Taxi Commercial Operators Certificate had been applied for but not yet issued. The date that the certificate was applied for is not included in the stipulation of facts. The number of flights made for the purpose of carrying Webcraft and other Beatrice unit executives, and the number of flights for unrelated third-party charters also are not provided in the stipulation of facts. The significant fact on which my decision turns is the primary use of the aircraft by KSS for transportation of the executives of its parent and related companies.
The key words in § 8.35 are “when utilized.” These words must be interpreted in a tax-exemption context. They *279 could mean when used “to any degree” or “principally” or “exclusively.” In the exemption context, these words are ambiguous. When language is capable of more than one interpretation, it is the duty of the court to “seek out and give effect to the legislative intent evident from the aids available to it.” Watt v. Mayor & Council of Boro. of Franklin, 21 N.J. 274, 278, 121 A.2d 499 (1956). The words “when utilized” indicate that the exemption applies when the aircraft is utilized by an air carrier as defined in the federal statutes and regulations. I find that these words impose the requirement that the aircraft actually be used for common carriage as opposed to merely being held out for hire. It is reasonable to assume that the Legislature intended that this use be more than minimal or nominal, and therefore a holding out for hire as a common carrier is not sufficient when the predominant use is clearly for private carriage.
 This statute is an exemption statute. It is an exception to the general rule that sales of tangible personal property are taxable. The statute must therefore be strictly construed against the claimant because an exemption from taxation is a departure from the equitable principle that everyone should bear one’s just and equal share of the public tax burden. Taxation is the rule; exemption is the exception to the rule. The legislative design to release one from one’s just proportion of the public burden should be expressed in clear and unequivocal terms. The burden is on the claimant to clearly bring itself within an exemption provision. Board of National Missions v. Neeld, 9 N.J. 349, 353, 88 A.2d 500 (1952); Phelps Dodge Indus. v. Taxation Div. Director, 8 N.J.Tax 354, 358 (Tax Ct.1986).
Assuming, for the purpose of this discussion (but not deciding), that KSS is an air carrier and that it utilized the aircraft for intrastate and interstate air commerce, the predominant use was for private, not common, carriage. Therefore, the aircraft was not being utilized within the reasonable intention of the Legislature. In the absence of regulations adopted by the Director, I am satisfied that a predominant use test is a *280 reasonable interpretation of the statute. In view of my decision with respect to this requirement, it is unnecessary for me to deal with the other two requirements of § 8.35.
My conclusion is supported by the case of Pacific Southwest Airlines v. State Board of Equalization, 140 Cal.Rptr. 543, 73 Cal.App.3d 32 (App.Div.1977). In that case, Pacific Southwest Airlines (PSA) purchased an aircraft and claimed an exemption under the California Sales and Use Tax Act which exempts “gross receipts from the sale of and storage, use, or other consumption of aircraft sold to persons using such aircraft as common carriers of persons or property.” Cal.Rev. & Tax Code § 6366. PSA was principally engaged in the business of operating aircraft as a common carrier in California. PSA also used its passenger aircraft during off-peak periods to generate other flight revenue, principally from the training of airline pilots for other carriers. During the first six months after delivery, only 30% of PSA’s use of the aircraft involved transporting passengers as a common carrier.
On audit, the California tax authorities, for the first time, interpreted the statute “as exempting from the sales tax only those aircraft ‘principally’ (more than 50%) used as a common carrier during a test period of the first six months after delivery.” The PSA aircraft was used in the following manner:
First six months after delivery. Approximately three years of ownership.
Transporting passengers as a common carrier. 30.14% 67.12%
Training own pilots. 6.6% 4.84%
Training pilots of other common carriers. 63.26% 28.04%
Even assigning “great weight” to the administrative interpretation of the exemption, the California court held that “insurmountable obstacles of statutory construction” required it to apply the plain meaning of the statute without regard to the *281 restrictive “six-month principal use” test. The court concluded that since the aircraft was used by PSA, a common carrier, PSA was entitled to the exemption.
The California court set aside the sales tax assessment on two grounds: first, lack of notice by the taxing authority invalidated the six-month principal use test, and second, the total of 71.96% of the use of the aircraft devoted to transporting passengers as a common carrier and training its own pilots over the three-year period of its ownership of the aircraft constituted the bona fide use contemplated by the statute. The decision of the California Court of Appeals supports my conclusion that predominant use by an air carrier is required for exemption.
III.

Taxpayer’s Challenge Under The Commerce Clause Of The United States Constitution.

KSS contends that its aircraft is not subject to New Jersey use tax because: (1) it is used exclusively as an instrumentality of interstate commerce and (2) no local “taxable moment” occurred, that is, there was no time when the aircraft was removed from interstate commerce and became a part of the common mass of property within New Jersey that is subject to its use tax. KSS argues that the aircraft was placed in interstate commerce prior to its entry into New Jersey, and that since then there has been no substantial interruption of its interstate activity. It bases its contention on W.R. Grace & Co. v. Comptroller, 255 Md. 550, 258 A.2d 740 (Md.1969), and King v. L & L Marine Service, Inc., 647 S.W.2d 524 (Mo.Sup. Ct.1983). In these cases, the Maryland and Missouri Supreme Courts held that a use tax cannot be imposed on a corporate aircraft brought into a state while engaged in interstate commerce, even though the state is the home base of the aircraft.
Taxpayer distinguishes the case of Sundstrand Corporation v. Department of Revenue, 34 Ill.App.3d 694, 339 N.E.2d 351 *282 (Ill.App.Ct.1975), on the ground that in Sundstrand the aircraft was owned by a corporation having its principal office in Illinois, delivery of the plane was accepted in Illinois and the plane was not placed in service until the next day. Therefore, the court held, a “taxable moment” had occurred in Illinois before the aircraft was introduced into interstate commerce.
The “taxable moment” test, as applied in the W.R. Grace, King and Sundstrand cases, gives the purchaser control over whether it is subject to tax liability. If the aircraft is brought directly to its home base state, the purchaser is subject to a use tax. If the aircraft is used to transport passengers or property in interstate commerce in the few days preceding its passage to its home base state, the purchaser is not subject to use tax in its home base state and may never be subject to a sales or use tax. This test assumes that the aircraft, while an instrumentality of interstate commerce, is not taxable unless a “taxable moment” in which the aircraft is not in interstate commerce can be identified. Hangarage and routine maintenance during interstate flights have been held to be a continuation of interstate commerce. For a “taxable moment” to occur, either the aircraft must come to rest in the taxing state prior to being introduced into interstate commerce, or its stay in the state when it is not engaged in interstate commerce must be protracted. See Independent Warehouses, Inc. v. Scheele, 331 U.S. 70, 67 S.Ct. 1062, 91 L.Ed. 1346 (1947); Union Pacific Co. v. Utah State Tax Comm., 110 Utah 99, 169 P.2d 804 (Sup.Ct.1946). In the subject case, there is no evidence that the KSS aircraft, although based in New Jersey, was ever removed from the stream of interstate commerce.
However, the several states are not prohibited from imposing a tax on interstate commerce. See Braniff Airways, Inc. v. Nebraska State Board, 347 U.S. 590, 598, 74 S.Ct. 757, 762, 98 L.Ed. 967, 975-976 (1954), reh’g den. 348 U.S. 852, 75 S.Ct. 18, 99 L.Ed. 671 (1954). Indeed, the case of Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), reh’g den. 430 U.S. 976, 97 S.Ct. 1669, 52 *283 L.Ed.2d 371 (1977), although decided in a gross income privilege tax setting, provides that interstate commerce must pay its fair share of the local tax burden, and sets forth the parameters for state taxation of interstate commerce instrumentalities. Complete Auto Transit permits state taxation of an instrumentality in interstate commerce if: (1) sufficient nexus is found between the taxing state and the interstate business, (2) the tax is fairly related to the benefits provided by the taxing state to the taxpayer, (3) the tax does not discriminate against interstate commerce, and (4) the tax is fairly apportioned to local activities. This test was designed to achieve the dual goals of protection of interstate commerce and attainment of tax fairness based on the benefits received from the taxing state. A principal concern was avoidance of the imposition of a multiplicity of taxes on the same instrumentality by the several states. See also American Trucking Associations, Inc. v. Scheiner, — U.S. -, 107 S.Ct. 2829, 97 L.Ed.2d 226 (1987).
In the subject case, KSS is a New Jersey corporation, and during the entire time of its service, the subject aircraft had its home base, and was hangared, at Morristown Airport in New Jersey. It is clear that sufficient nexus exists to justify taxation by New Jersey, and that the tax does not discriminate against interstate commerce because it is imposed uniformly on residents and nonresidents, and on intrastate and interstate commerce. Further, the tax is fairly related to the benefits provided by New Jersey to the taxpayer. It has been held that a tax measured by a reasonable percentage of the sale price is not unreasonably related to the benefits provided by the state. Washington Rev. Dept. v. Stevedoring Ass’n., 435 U.S. 734, 737-751, 98 S.Ct. 1388, 1392-1399, 55 L.Ed.2d 682, 688-697 (1978).
Finally, the subject tax meets the “fairly apportioned to local activities” prong of the Complete Auto Transit test. The purpose of this prong is to prevent an undue burden on interstate commerce due to multiple taxation by several states. The sales and use tax differs from taxes measured by income or *284 gross receipts, for which apportionment has had longstanding acceptance. The sales tax is a transactional tax, and the use tax complements and aids in its enforcement. The use tax is a tax on the privilege of exercising any right or power in New Jersey over tangible personal property purchased outside this State and therefore not subject to New Jersey sales tax, but used in this State to the same extent as property purchased here for which New Jersey sales tax has been paid. This tax prevents loss of revenue to New Jersey on out-of-state purchases. N.J.S.A. 54:32B-2(h). Due to the nature of the sales and use tax, it is impractical to apportion this tax. However, it is not necessary in this case to apportion the use tax since, as here applied, this tax does not conflict with the Complete Auto Transit objective of preventing multiple taxation because: (1) no sales or use tax has been imposed by any other state on the purchase of this aircraft and (2) the New Jersey statute provides a credit for sales or use tax paid to another state. N.J.S.A. 54:32B-11(6).
In the subject case, KSS took delivery of the aircraft in the State of Delaware, which does not impose a sales tax. Had the purchase been made in New Jersey, a sales tax would have been imposed. Had the purchase been made in another state which imposed a sales tax, a credit would have been allowed by New Jersey for the tax paid in that state (provided that that state also had a similar credit provision in its sales and use tax act[3]). The credit provision eliminates multiple taxation.
Five states, Alaska, New Hampshire, Montana, Oregon and Delaware, have no sales and use tax. The statutes of three states, Arkansas, Nevada and South Carolina, do not provide for a credit. Forty-two states allow a credit. Of the states that do allow a credit, 13 allow a credit only on a reciprocal *285 basis. These credit provisions create a national system under which the first state of purchase or use imposes the tax. Thereafter, no other state taxes the transaction unless there has been no prior tax imposed (as is true in the subject case) or if the tax rate of the prior taxing state is less, in which case the subsequent taxing state imposes a tax measured only by the differential rate. The system so created is similar to that created by the truck registration fee system commented on in American Trucking Associations, Inc. v. Scheiner, supra. Justice Stevens, writing for the majority, stated:
The State’s vehicle registration fee has its counterpart in every other State and the District of Columbia. See 2 CCH State Tax Guide 5011-5169 (2d ed. 1986). It is a tax that readily satisfies the test of ‘internal consistency’ that we have applied in other contexts. Under this test, eve,n though the registration fee is assessed, as indeed it has been, by every jurisdiction, it causes no impermissible interference with free trade because every State respects the registration of every other State. Payment of one registration fee enables a carrier to operate a vehicle either locally or in the interstate market. Having paid one registration fee, a vehicle may pass among the States as freely as it may roam the State in which it is based; the Commerce Clause is not offended when state boundaries are economically irrelevant. [— U.S. at -, 107 S.Ct. at 2840, 97 L.Ed. 2d at 242; footnote omitted]
Relying on the principles laid down in Complete Auto Transit, recent decisions in other states have upheld the constitutional validity of the imposition of use tax on aircraft. In Whitcomb v. Commissioner, 144 Vt. 466, 479 A.2d 164 (Sup.Ct. 1984), the Supreme Court of Vermont ruled that a use tax did not have to be apportioned to conform to the Complete Auto Transit test when no tax had been imposed by another state and the Vermont statute provided for a credit for sales or use tax imposed by another state. This case dealt with an aircraft used by a New Hampshire corporation to transport personnel and equipment to its Vermont activities which included highway construction, the operation of quarries and an asphalt plant. The home base of the aircraft was New Hampshire, but approximately 17% of its flight time was attributable to Vermont. Taxpayer did not challenge Vermont's right to impose a use tax, but argued that it should be imposed only on 17% of the purchase price. New Hampshire does not impose a sales tax. The court stated:
*286 Two methods of taxation have been developed to ameliorate the risk of cumulative tax burdens upon interstate transactions. First, as in Henneford v. Silas Mason Co., 300 U.S. 577, 583-84, 587, 57 S.Ct. 524, 527, 529, 81 L.Ed. 814 (1937), multiple taxation may be avoided by a tax credit which provides an offset or exemption if a sales or use tax has been paid to another state or jurisdiction. Second, the tax burden may be apportioned. [479 A.2d at 167]
The Whitcomb court further stated:
The Commerce Clause does not require apportionment in addition to a tax credit. The rule of Complete Auto, supra, requiring a tax on interstate commerce to be ‘fairly apportioned’ is satisfied here. The state has provided a tax credit in lieu of apportionment. This credit, not unlike a proportionate tax, eliminates the possibility of cumulative use tax liability. The Vermont legislature has chosen not to incorporate apportionment within the use tax scheme. This Court, therefore, is without power to impose such a requirement ... We agree with the Commissioner that apportionment of this tax is neither constitutionally required nor legislatively authorized. [Id., 479 A.2d at 168]
In Great American Airways v. Nevada State Tax Commission, 101 Nev. 422, 705 P.2d 654 (Sup.Ct.1985), the Supreme Court of Nevada held that imposition of a use tax on an aircraft purchased out of state by a Nevada corporation having its home base in Eeno, for use in interstate transportation of charter air passengers, was not an unconstitutional burden on interstate commerce under the Complete Auto Transit test. The court held that the taxpayer failed to demonstrate that actual multiple taxation had occurred or that another state was attempting to impose a use tax. The court held: “Viewing the use tax as complementary to the sales tax, pnly Nevada has a sufficient nexus with [Great American Airways] to levy a use tax upon its out-of-state airplane purchase. The special relationship between sales and use taxes, along with the Complete Auto Transit criteria, makes the tax in the case at bar inherently apportioned.” [Id. at 658][4]
I also note that in Miller v. Commissioner of Revenue, 359 N.W.2d 620 (Minn.Sup.Ct.1985), the Supreme Court of Minnesota held that a use tax need not be apportioned when imposed on farm machinery purchased by a North Dakota resident for his *287 farm, which straddled the border of North Dakota and Minnesota, and 68% of which was in Minnesota. A 2% sales tax was paid to North Dakota. Minnesota imposed a use tax subject to a credit for the sales tax paid to North Dakota. The Minnesota Tax Court apportioned Minnesota’s 4% use tax by imposing the 4% tax on 68% of the purchase price and allowing a credit for 68% of the 2% sales tax paid to North Dakota. The Minnesota Supreme Court reversed, holding that there was no statutory authority for the apportionment. Taxpayer’s contention that the tax as applied placed an impermissible burden on interstate commerce was rejected by the court, which stated:
However, liability for use tax, as measured by this court and courts of other jurisdictions, has long been upheld by the United States Supreme Court against commerce clause attack since such liability only equalizes the positions of in-state and out-of-state purchasers. Henneford v. Silas Mason Co., 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814 (1937); see also Maryland v. Louisiana, 451 U.S. 725, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981) (use taxes [are] ‘equalizing’ or ‘compensating’ taxes redressing intrastate burden placed on in-state purchasers and manufacturers by sales tax). Moreover, we are persuaded that the constitutional standards for state taxation of interstate commerce set forth in Complete Auto Transit v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), reh’g denied, 430 U.S. 976, 97 S.Ct. 1669, 52 L.Ed.2d 371 (1977), do not alter this result. [Id. at 622]
I conclude that the out-of-state purchase of a corporate aircraft having its home base in New Jersey, by a New Jersey corporation which has paid no sales or use tax to any other state on the purchase, is subject to use tax by New Jersey, and that such tax is not in conflict with the Commerce Clause of the United States Constitution. In so doing, I do not choose to follow the W.R. Grace case, decided prior to Complete Auto Transit, or the King case, which relied on W.R. Grace and does not cite Complete Auto Transit but limits its discussion to the “taxable moment” test. I choose to follow the more recent Vermont, Nevada and Minnesota Supreme Court decisions, which apply the Complete Auto Transit test, the apportionment requirement being satisfied by the sales and use tax credit provisions which constitute an internally consistent national system to prevent multiple taxation.
The Clerk of the Tax Court is directed to enter judgment affirming the Director’s use tax assessment.

See 14 C.F.R. § 135.1, et seq. for regulations governing air taxi operators who offer aircraft for charter.

The effective date of this exemption was subsequent to the tax periods under review in Airwork Service Div. v. Taxation Div. Director, 97 N.J. 290, 478 A.2d 729 (1984), cert. den. 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985) and First Nat'l. City Bank v. Taxation Div. Director, 5 N.J.Tax 310 (Tax Ct.1983).

The New Jersey sales and use tax credit provision for tax paid to another jurisdiction does not apply unless that jurisdiction allows a corresponding credit for sales or use tax paid to New Jersey. Since that fact situation is not present in this case, it is unnecessary for me to deal with a transaction where another state having no credit provision has imposed a sales tax on the aircraft.

The application of the Complete Auto Transit test by the Nevada court to prevent multiplicity of taxation appears to preserve the internal conspiracy of the system, even though the Nevada statute has no credit provision.