NOT FOR PUBLICATION WITHOUT THE APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

\-------------------------------------------------------

ONE MAIN ST EDGEWATER, LLC
C/O NAT'L RE/,

      Plaintiff,

      v.

EDGEWATER BOROUGH,

      Defendant.

\-------------------------------------------------------

TAX COURT OF NEW JERSEY
DOCKET NOS. 000444-2026
          000445-2026

Approved for Publication
In the New Jersey
Tax Court Reports

Decided: April _27__, 2026

Gregory J. Hazley for plaintiff (DeCotiis, FitzPatrick, Cole & Giblin, LLP, attorneys).

Robert P. Travers for defendant (Robert P. Travers Law, LLC, attorneys).

RAFFETTO, J.T.C.

Plaintiff, One Main St Edgewater, LLC (plaintiff), contests the property classification of two adjacent parcels of real property that are improved with mixed-use buildings located in Edgewater Borough's (defendant) taxing district. Each property is the site of a six-story structure comprised of retail space on the ground level and residential rental apartments on the floors above. Both properties were classified as Class 4A commercial property (4A) by defendant's tax assessor as part






of his tax list for tax year 2026.

Plaintiff asserts that the properties should have been classified as Class 4C apartments (4C) given their predominant use as multi-family residential apartments rather than as commercial. The parcels are currently under contract to be sold. The proposed reclassifications would remove the requirement for plaintiff to pay the additional fee prescribed under N.J.S.A. 46:15-7.2,[1] as part of the realty transfer fees required to be paid to the county recording officer at the time the deeds are offered for recording. N.J.S.A. 46:15-5 to -11.

In furtherance of its position, plaintiff has moved for summary judgment in these matters claiming that it is entitled to judgment as a matter of law reclassifying each property from 4A to 4C.

Neither existing law nor case precedent has addressed mixed-use properties in the context of property classification for local property tax assessment purposes under N.J.A.C. 18:12-2.2. As such, this is a case of first impression.

For the following reasons, the court concludes that, in the absence of further statutory guidance from the Legislature and/or the adoption of administrative regulations by the Director of the Division of Taxation (the Director) concerning

---

[1] The additional fee imposed under N.J.S.A. 46:15-7.2 is commonly referred to as the "mansion tax"; however, the term "mansion tax" is not employed under N.J.S.A. 46:15-7.2.

2

mixed-use properties, a predominant use test is the appropriate standard for determining a property's classification for local property tax assessment purposes. Therefore, the court adopts the predominant use test for resolution of these matters.

For the reasons set forth below, applying this test to the facts presented, the court finds that each property should be reclassified from 4A to 4C. Therefore, the court grants plaintiff's motions for summary judgment and will enter Orders accordingly.

## I. Findings of Fact

The facts are not in dispute. Plaintiff is the owner of three adjacent parcels of real property, two of which are the subject of these appeals. Together the properties comprise "The View at Edgewater Harbor" (the development). The development is located along the Hudson River waterfront in defendant's taxing district. The properties are designated as: (1) Block 99, Lot 1.03 (Lot 1.03), otherwise known as 45 River Road; and (2) Block 99, Lot 1.05 (Lot 1.05), otherwise known as Two Main Street (when referenced together, the subject properties). The third parcel, which is not under appeal, is designated as Block 99, Lot 1.07 (Lot 1.07), otherwise known as Four Main Street.

Lot 1.03 is improved with a six-story building containing retail on the first floor and sixty-five residential apartment rental units on the five stories above ground level. The residential units encompass 65,115 square feet of the building,

3

while the first-floor retail portion covers 9,350 square feet. Overall, the retail space comprises approximately 14% of Lot 1.03's building area. Defendant's tax assessor classified Lot 1.03 as 4A for tax year 2026.

Lot 1.05 is also improved with a six-story building containing retail on the first floor and forty-five residential apartment rental units on the five stories above ground level. The residential units encompass 51,960 square feet of the building, while the first-floor retail portion covers 4,992 square feet. Overall, the retail space comprises less than 10% of Lot 1.05's building area. Defendant's tax assessor classified Lot 1.05 as 4A for tax year 2026.

Lot 1.07 is improved with a five-story building containing retail on the first floor and fifty-two residential apartment rental units on the four stories above ground level. The residential units encompass 52,648 square feet of the building, while the first-floor retail portion covers 8,546 square feet. Overall, the retail space comprises approximately 16% of Lot 1.07's building area. Although Lot 1.07 contains the highest percentage of retail space among the three buildings within the development, it was classified as 4C by defendant's tax assessor for tax year 2026. As noted above, this parcel is not subject to a pending appeal.

The development includes a fitness center, coworking space, a pool and other amenities for the residents of the three buildings.

Plaintiff's Vice President provided a summary of the square footage

4

allocations of the three buildings as part of her certification in support of plaintiff's summary judgment motions. The allocations were summarized as follows:[2]

| Property | Residential Units | Residential Sq. Ft. | Retail Sq. Ft | Percentage of Retail | Class |
|---|---|---|---|---|---|
| Block 99, Lot 1.03 | 65 | 65,115 | 9,350 | 14% | 4A |
| Block 99, Lot 1.05 | 45 | 51,960 | 4,992 | ~10% | 4A |
| Block 99, Lot 1.07 | 52 | 52,648 | 8,546 | 16% | 4C |
| Total | 162 | 169,723 | 22,888 | 13% | |

Additionally, the Vice President certified to the income generated by each building during calendar years 2023 through 2025, which was supported by an accrual-basis gross income comparison statement covering those years. The statement compares the ratio of income generated from the retail component of each building versus that received from the residential apartment rental component. The comparison was summarized by plaintiff in the table below:

---

[2] The allocations referenced in the table are as shown in plaintiff's submissions. However, based on the figures referenced, the court's computations of "Percentage of Retail" are: Lot 1.03 (14.4%); Lot 1.05 (9.6%); Lot 1.07 (16.2%); and Total (13.5%). The court's computations do not impact its final conclusions herein.

5

|  | Income | 2025 | 2024 | 2023 | Avg. % Retail Income 2023-25 |
|---|---|---|---|---|---|
| **Lot 1.03** | **Retail** | 407,322.63 | 400,187.29 | 392,317.40 |  |
| (Class 4A) | **Residential** | 2,736,329.32 | 2,691,542.06 | 2,664,761.21 | 12.9% |
|  | **Total** | 3,143,651.95 | 3,091,729.35 | 3,057,078.61 |  |
|  |  |  |  |  |  |
| **Lot 1.05** | **Retail** | 228,961.03 | 224,260.34 | 220,107.57 |  |
| (Class 4A) | **Residential** | 1,908,468.18 | 1,886,119.43 | 1,869,346.57 | 10.6% |
|  | **Total** | 2,137,449.21 | 2,110,379.77 | 2,089,454.14 |  |
|  |  |  |  |  |  |
| **Lot 1.07** | **Retail** | 369,673.05 | 365,578.57 | 359,963.14 |  |
| (Class 4C) | **Residential** | 2,045,448.06 | 2,020,316.43 | 1,996,438.57 | 15.3% |
|  | **Total** | 2,415,121.11 | 2,385,895.00 | 2,356,401.71 |  |

The above two tables, plaintiff contends, demonstrate that the ratios of residential-to-retail use based upon square footage and residential-to-retail rental income of the properties disproportionately favor the residential component.

In response to the motions, defendant concedes the material facts offered by plaintiff and does not present any cognizable opposition to the relief sought. Defendant takes no position on the reclassification other than to state, in a certification of its tax assessor, that the determination as to whether the subject properties should be classified as 4A or 4C "is a matter of interpretation."

## II.    Conclusions of Law

### A. The Additional Realty Transfer Fee

The additional realty transfer fee (additional RTF or fee), commonly known as the "mansion tax", was initially crafted by the Legislature in 2004.[3]   That legislation imposed an additional realty transfer fee at the time of transfer of title upon the grantee of real property zoned for residential use, whether improved or not, for consideration in excess of $1,000,000.[4]   The fee equated to 1% of the entire consideration and was collected by the county recording officer at the time the deed was offered for recording.  The revenue generated by the fee was remitted to the State Treasurer.  The legislation establishing the additional RTF applied to transfers of real property occurring on and after August 1, 2004, and was codified under N.J.S.A. 46:15-7.2.

Shortly thereafter in 2005,[5] the Legislature amended the Act to revise and expand the types of properties which were subject to the additional RTF.  Notably, the revised law made the fee applicable to certain types of real property based upon its property classification as set forth under N.J.A.C. 18:12-2.2, rather than its zoning

---

[3]  L. 2004, c. 66, § 8, eff. June 30, 2004 (the Act).

[4]  The other prerequisites to record deeds and the realty transfer fees imposed thereon are specified under N.J.S.A. 46:15-5 to -11.

[5]  L. 2005, c. 19, § 1, eff. Feb. 1, 2005.

status as prescribed in the original law.

In addition to residential property (the definition of which was amended to include property that is classified pursuant to the requirements of N.J.A.C. 18:12-2.2 as Class 2 "Residential Property"), the fee was extended to apply to several other categories of real property as well. The additional property types included Class 3A "Farm Property (Regular)", as well as any other real property that was effectively transferred to the same grantee in conjunction with a Class 3A "Farm Property (Regular)", and cooperative units as defined under N.J.S.A. 46:8D-3. The 2005 revisions implicitly exempted purchases of vacant land from the additional RTF, as well as purchases of apartment buildings and certain other types of real property.[6]

Also included as part of the 2005 amendments was a new section directing that the additional RTF is subject to the provisions of the State Uniform Tax Procedure Law, N.J.S.A. 54:48-1 to 54-6. Thus, a taxpayer may file a claim for refund at any time within ninety days after payment of the fee. N.J.S.A. 46:15-7.2(c).

---

[6] See Legislative Fiscal Estimate to S. 2057 (Dec. 16, 2004) (noting that the estimated cost to the State due to exemptions should be increased by the cost for "purchases of apartment buildings"); Senate Budget & Appropriations Comm. Statement to A. 3302 (Dec. 6, 2004) (proposed law "removes vacant land and apartment buildings from coverage of the transfer fee").

In 2006, the Legislature amended the Act once again.[7]  Significantly, these amendments expanded the scope of the fee to apply to the transfer of certain specific types of commercial property for the first time.  In particular, the new language added real property that is classified pursuant to the requirements of N.J.A.C. 18:12-2.2 as Class 4A "Commercial Property" to the list of parcels that are subject to the additional RTF.  Importantly, N.J.A.C. 18:12-2.2(e) specifically excludes property in Classes 1, 2, 3A, 3B, 4B, and 4C from the definition of Class 4A "Commercial Property".  Properties classified as Class 4C "Apartments" principally include apartment buildings designed for the use and enjoyment of five families or more.  As such, Class 4A does not include Class 4C apartments.  The Fiscal Notes and Statement accompanying the 2006 legislation repeatedly highlight the new law's exemption of Class 4C "Apartments" from the fee.[8]

In addition to including certain types of commercial property as being subject to the fee, the 2006 amendments required that an affidavit of consideration be filed relating to the transfer of any property classified under N.J.A.C. 18:12-2.2 as Class 4 property of any type.  N.J.S.A. 46:15-7.2(d).

---

[7]  L. 2006, c. 33, § 1, eff. Aug. 1, 2006.

[8]  Fiscal Note to A. 4701 (2006); Fiscal Note to S. 1982 (2006); Assembly Budget Comm. Statement to A. 4701 (2006); Senate Budget & Appropriations Comm. Statement to S. 1982 (2006).

Finally, the 2006 revisions established a new tax known as the controlling interest transfer tax (the CITT). N.J.S.A. 54:15C-1. The CITT generally pertains to "the sale or transfer for consideration in excess of $1,000,000 of a controlling interest in an entity which possesses, directly or indirectly, a controlling interest in classified real property . . .".[9] Ibid. The CITT was set at 1% of the consideration paid on the sale or transfer, which was required to be paid by the purchaser of the controlling interest.

Notwithstanding, the 2006 amendments also exempted from both the additional RTF and the CITT any sale or transfer that is incidental to a corporate merger or acquisition under certain circumstances. Specifically, the exemption applies where the equalized assessed value of the real property transferred is less than 20% of the total value of all assets exchanged in the merger or acquisition. N.J.S.A. 46:15-7.2(b)(2); N.J.S.A. 54:15C-1(c)(5).

In 2020, the Legislature took further action to amend the Act.[10] These revisions exempted from the additional RTF any deed where the transfer of real property is entered into on or after January 1, 2021, and constitutes an intercompany

---

[9] The terms "[c]ontrolling interest" and "[c]lassified real property" are defined under N.J.S.A. 54:15C-1(g). The latter phrase refers to property that is classified pursuant to the requirements of N.J.A.C. 18:12-2.2 as Class 4A "Commercial Property".

[10] L. 2020, c. 118, § 2, eff. Nov. 4, 2020.

10

transfer between combined group members as part of the unitary business. N.J.S.A. 46:15-7.2(b)(3).

And most recently, in 2025 the Legislature enacted amendments of a substantial nature to both the Act and the CITT.[11] Of major consequence, the 2025 legislation requires the seller, rather than the buyer, to be responsible for payment of both the additional RTF and the CITT on transfers in excess of $1,000,000. Also, the new revisions significantly expanded how both the additional RTF and the CITT would be calculated. Instead of a blanket 1% amount due based upon the entire consideration paid, the new statutory scheme imposes a graduated fee or tax, as applicable, as follows:

- If the consideration exceeds $1,000,000 but is not in excess of $2,000,000, the fee is 1%;

- If the consideration exceeds $2,000,000 but is not in excess of $2,500,000, the fee is 2%;

- If the consideration exceeds $2,500,000 but is not in excess of $3,000,000, the fee is 2.5%;

- If the consideration exceeds $3,000,000 but is not in excess of $3,500,000, the fee is 3%; and

- If the consideration exceeds $3,500,000, the fee is 3.5%.

_____

[11] L. 2025, c. 69, §§ 1, 3, eff. June 30, 2025.

## B. Property Classification

Tax assessors in New Jersey are required to place an assessment on each parcel of real property in the taxing district as of October 1 of the pre-tax year. N.J.S.A. 54:4-23.

Assessors are also required to annually formulate a tax list identifying each property's owner, description and area, and assessed value. N.J.S.A. 54:4-24. In this connection, the assessor must comply with the "forms and methods as may be prescribed by the Director of the Division of Taxation including, without limitation of the foregoing, a listing of the use of each parcel assessed." N.J.S.A. 54:4-26 (emphasis added). See also N.J.A.C. 18:12-2.1 (stating that the assessor must "classify each line item on the tax list according to the several categories enumerated in N.J.A.C. 18:12-2.2 by the applicable property classification code symbol").

For purposes of calculating school aid, county equalization, and Chapter 123 ratios the assessor is first obligated to classify each property as (1) vacant, (2) residential, (3) farmland, or (4) other. Bordentown Real Estate Assoc. v. Dir., Div. of Taxation, 24 N.J. Tax 561, 568 (Tax 2009). The assessor is further required to subclassify category 4 properties into additional categories, including 4A "Commercial Property", 4B "Industrial Property", or 4C "Apartments". Ibid.; N.J.A.C. 18:12-2.1; N.J.A.C. 18:12-2.2.

As noted earlier, N.J.A.C. 18:12-2.2 provides a breakdown of the various property classifications. As relevant here, Class 4A "Commercial Property" means "any other type of income-producing property <u>other than</u> property in classes 1, 2, 3A, 4B, and <u>4C</u> . . . ". N.J.A.C. 18:12-2.2(e) (emphasis added). And Class 4C "Apartments" means "[a]partments designed for the use and enjoyment of five families or more including residential co-operatives and mutual housing corporations." N.J.A.C. 18:12-2.2(g).[12] The regulations state that although "Classes 4A, 4B, and 4C are required to be separately designated on the tax list, the aggregate of these classes will be indicated as Class 4 ('Other') for the purpose of the Table of Equalized Valuations (school aid table)." N.J.A.C. 18:12-2.2(g)(1).[13] In other words, Class 4 is denoted as "Other" and constitutes "an aggregate of the subcategories of" Classes 4A, 4B, and 4C. New Jersey Division of Taxation, <u>Handbook for New Jersey Assessors</u>, § 1005.01 (2024).

Importantly, there is no prescribed classification set forth under N.J.A.C.

---

[12] Certain "[m]edical residential facilities" are, however, deemed to be Class 4A properties. N.J.A.C. 18:12-2.2(g). Examples include "assisted living facilities, comprehensive personal care homes, long-term care facilities, acute care facilities, nursing homes, drug abuse treatment centers, hospice facilities, behavioral health programs," and "residential health care facilities." <u>Ibid.</u>

[13] While property classifications are important in calculating school aid, county equalization, and Chapter 123 ratios, the subclassification among Class 4 properties has no impact on these ratios or on the quantum of the assessment. <u>Bordentown</u>, 24 N.J. Tax at 568.

18:12-2.2 which addresses properties that do not fit squarely within the confines of one of the specifically delineated categories, such as for mixed-use properties that may contain components of several different property types. Moreover, there is no statutory language nor any administrative regulations promulgated by the Director that provide guidance as to how to classify such properties.

### C. **Tax Court Jurisdiction to Review Property Classification**

The Tax Court was created as a court of limited jurisdiction under N.J. Const. art. VI, § I, ¶ 1; N.J.S.A. 2B:13-1. The Tax Court's jurisdiction is articulated under N.J.S.A. 2B:13-2, which states:

> The Tax Court shall have jurisdiction to review actions or regulations with respect to a tax matter of the following:
> (1) Any state agency or official;
> (2) A county board of taxation;
> (3) A county or municipal official.
>
> [N.J.S.A. 2B:13-2(a).]

Additionally, R. 8:2 of the rules governing practice before the Tax Court provides as follows:

> General Jurisdiction. The Tax Court shall have initial review jurisdiction of all final decisions including any act, action, proceeding, ruling, decision, order or judgment including the promulgation of any rule or regulation of… any county or municipal official with respect to a tax matter (including realty transfer fee).
>
> [R. 8:2(a).]

Although, as indicated earlier, property classification of each line item on the

14

tax list is one of the responsibilities of the assessor in connection with the annual setting of assessments,[14] there is little statutory guidance or case law addressing the process for review of such classifications. The only reported decisions thus far include Bordentown, 24 N.J. Tax 561[15] and Ridgewood Commons Grp. v. Dir., Div. of Taxation, 25 N.J. Tax 188 (Tax 2009).

Both cases involved challenges to determinations made by the Director with respect to the additional RTF (referenced in each case as the mansion tax) paid in connection with the closing of title to certain properties. In each matter, plaintiffs paid the fee based on the total consideration stated in the respective deeds and

---

[14] N.J.A.C. 18:12-2.1 to -2.3; Handbook for New Jersey Assessors, § 1005.01.

[15] In Bordentown, Judge Small remarked as follows:

> I have found no reason which would lead either a taxpayer or a governmental body to want to challenge a subclassification as between 4A, 4B, 4C or 4D other than the recently enacted part of the mansion tax taxing the transfer of commercial (4A) property but not taxing transfers of the other three classes (4B Industrial, 4C Apartment, or 4D Other). Thus, although these subclassifications of Class 4 may serve useful statistical purposes, there would be no motivation for a property owner, municipality or, in fact, anyone, to challenge the improper subclassification (within Class 4) of a specific property except in the context of imposition of the mansion tax.
>
> [24 N.J. Tax at 569.]

thereafter filed a claim seeking a refund of all or part of the fee for the reasons set forth in the opinions. The Director denied the refund request in both cases and plaintiffs filed complaints with the Tax Court contesting the Director's decisions. The Tax Court's jurisdiction to review the Director's determinations was clear, so long as the complaints were filed timely. N.J.S.A. 54:51A-14.

There are no reported cases, however, involving a challenge to the tax assessor's classification of a property where the complaint was filed in advance of a transfer of title and prior to the closing of title and payment of the fee. N.J.S.A. 46:15-7.2 includes a provision at subsection "c" which states that a taxpayer may file a claim for refund at any time within ninety days after the payment of the fee. N.J.S.A. 46:15-7.2(c). But that avenue of relief requires the taxpayer to make payment of the fee at the time of the closing to ensure that the deed will be recorded and then seek a refund thereafter.

In this instance, plaintiff has affirmatively filed the within appeals seeking to challenge the tax assessor's property classifications prior to the anticipated closing date.

The statutes governing appeals of local property tax assessments are silent with respect to this issue. N.J.S.A. 54:3-21 governs the process for filing appeals to both the county board of taxation and the Tax Court directly (in cases where the assessed valuation exceeds $1,000,000). That statute reads as follows:

16

[A] taxpayer feeling aggrieved by the <u>assessed valuation or exempt status</u> of the taxpayer's property or a taxing district which may feel discriminated against by the <u>assessed valuation or exempt status</u> of property in the taxing district, or by the <u>assessed valuation or exempt status</u> of property in another taxing district in the county, may on or before April 1, or 45 days from the date the bulk mailing of notification of assessment is completed in the taxing district, whichever is later, appeal to the county board of taxation by filing with it a petition of appeal; provided, however, that any such taxpayer or taxing district may . . . file a complaint directly with the Tax Court, if the assessed valuation of the property subject to the appeal exceeds $1,000,000.

[N.J.S.A. 54:3-21 (emphasis added).]

The language of the statute particularly addresses appeals concerning the "assessed valuation" or "exempt status" of property but fails to reference the potential for appeals concerning property classification. Although property classification is separate from the quantum of the assessment, it is nevertheless an issue for which a taxpayer may feel aggrieved.

While not directly mentioned under N.J.S.A. 54:3-21, classification appeals are nonetheless referenced within a subset of that same overall statute. See N.J.S.A. 54:3-21.3. This statute specifies the filing fees for appeals to the county board of taxation. The fees are generally graduated depending upon the quantum of the assessment. N.J.S.A. 54:3-21.3(a). However, subsections "b" and "c" of N.J.S.A. 54:3-21.3 reference a fee for appeals of property classification as follows:

17

(b) When the appeal [to the county board of taxation] shall involve only the <u>classification of property</u>, for each parcel of property sought to be <u>reclassified</u> the fee shall be $25.00.

(c) When the appeal shall involve both the assessed valuation of property and the <u>classification of property</u>, the fees shall be according to the provisions of (a) and (b) of this section.

[N.J.S.A. 54:3-21.3(b); (c) (emphasis added).]

It should be noted that the filing fees for matters before the Tax Court are established by court rule rather than under N.J.S.A. 54:3-21.3.[16]

In any event, given that the Legislature specifically contemplated a fee for property reclassification appeals under the statutory umbrella of N.J.S.A. 54:3-21, which governs appeals to both the county board of taxation and the Tax Court, the court finds that an appeal (either to the county board of taxation or the Tax Court directly) may be filed relating solely to property classification. Moreover, as plaintiff in these matters filed its complaints on February 10, 2026, which was well before the statutory filing deadline for 2026 appeals per N.J.S.A. 54:3-21, the court finds that it has jurisdiction to consider plaintiff's appeals.

---

[16] The Tax Court fees concerning local property tax matters are found under <u>R.</u> 8:12 and do not refer to a specific fee for classification appeals, but rather establish general fees based upon property type and whether the matter in dispute is assigned to the small claims division under <u>R.</u> 8:11.

18

**D. Summary Judgment**

Summary judgment motions are governed by R. 4:46-2 and the standards articulated by the New Jersey Supreme Court in Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520 (1995). Under R. 4:46-2(c), summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." An issue of fact is genuine "only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Ibid.

In Brill, the Supreme Court stated that,

> [W]hen deciding a motion for summary judgment under R. 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party. This assessment of the evidence is to be conducted in the same manner as that required under R. 4:37-2(b).
>
> [Brill, 142 N.J. at 523.]

The Court continued by commenting that, "[b]y its plain language, R. 4:46-2

19

dictates that a court should deny a summary judgment motion *only* where the party opposing the motion has come forward with evidence that creates a 'genuine issue as to any material fact challenged.'" Id. at 529. The overall import of the Brill decision was to "encourage trial courts not to refrain from granting summary judgment when the proper circumstances present themselves." Id. at 541. See also Howell Twp. v. Monmouth Cnty. Bd. of Taxation, 18 N.J. Tax 149, 153 (Tax 1999). If an opposing party offers no affidavits or argument in opposition, that party cannot be heard to complain if the court grants summary judgment. Judson v. Peoples Bank & Trust Co., 17 N.J. 67, 75 (1954); Freehold Borough v. WNY Properties L.P./Post & Coach, 20 N.J. Tax 588, 595 (Tax 2003).

The facts here are not disputed. Defendant has admitted all the material facts asserted by plaintiff, including the mixed-use nature of the subject properties, the respective percentages of use and gross income in this regard, and has offered no competent evidence in opposition to the motions. As to plaintiff's assertion that the percentages evidence a basis for reclassification from 4A to 4C, defendant's tax assessor merely stated that this determination "is a matter of interpretation." This statement does not evidence that there is a material fact in genuine issue; rather, it indicates that defendant agrees the issue presented is legal in nature, as opposed to

20

factual.[17]  Notably, the tax assessor did not address his rationale for classifying one of the three properties as 4C and the other two properties as 4A, even though they were almost identical in terms of the extent of apartment versus commercial use.

The sole issue to be determined by the court is a legal one involving the correct property classification based upon the agreed-upon facts and usage.  Under these circumstances, the court determines that the matters are ripe for summary judgment.

### E.  **Determining Property Classification for Mixed-Use Properties**

The court recognizes that neither law (including statutory and case law) nor administrative regulations adopted by the Director have addressed how to handle mixed-use properties for property classification purposes.[18]  However, the court also recognizes that a predominant use test has been utilized with favor by the Tax Court in prior cases involving mixed uses in the areas of both local property tax and state

---

[17]  Cf. Bordentown, 24 N.J. Tax at 587-88 (since the tax assessor failed to respond to the property owner's request to reclassify the subject property from Class 4A to 4B based on its use as a warehouse, and the court did not have before it the assessor's explanation or justification as to his classification "determination," summary judgment was inappropriate).

[18]  At some point following enactment of L. 2025, c. 69, the Director released an undated memorandum titled "General Information on the Graduated Percent Fee." This memorandum states, among other things, that commercial mixed-use properties should be classified as 4A because that property class constitutes a "catch-all" category encompassing all commercial property that is not solely industrial or solely an apartment building.  However, since this advice is not grounded in any statute or administrative regulation validly promulgated in accordance with the New Jersey Administrative Procedure Act, N.J.S.A. 52:14B-1, it is of no legal consequence to this court.

21

tax.

As to local property tax, the most prevalent reliance upon the predominant use test has been in farmland assessment. The farmland cases generally involve situations where there are two coexistent uses of land, one which is agricultural and one which is not. See Atlantic Coast LEH, LLC v. Little Egg Harbor Twp., 26 N.J. Tax 151 (Tax 2011) (applying the predominant use test to determine whether farmland assessment should be granted concerning property that was used for both the operation of a cellular tower for income-generating purposes and the maintenance of beehives for the production of honey, wax, and other apiary products); Green Pond Corp. v. Rockaway Twp., 2 N.J. Tax 273, 289 (Tax 1981) (involving approximately 1,000 acres of property used as both a private residential community and as undeveloped woodland, stating that "although multiple uses of a parcel of land, some agricultural and some non-agricultural, do not automatically disqualify it for farmland assessment, the agricultural use must predominate"); East Orange v. Livingston, 102 N.J. Super. 512, 537 (Law Div. 1968) (involving 2,500 acres of property used by East Orange as the East Orange Water Reserve, stating that "[d]epending upon the particular lands involved, one use tends to become dominant," and finding that the "primary use" of the lands was as a watershed for the supply of public water rather than as farmland, which use was "subservient").

The predominant use test has also been applied in connection with local

22

property tax exemption. In Hunterdon Med. Ctr. v. Readington Twp., 22 N.J. Tax 302 (Tax 2005), aff'd, 391 N.J. Super. 434 (App. Div. 2007), rev'd in part, 195 N.J. 549 (2008), Judge Kuskin devised his own "analytical framework" for differentiating between off-campus hospital facilities that would qualify for tax exemption under N.J.S.A. 54:4-3.6 and those that would not. See id. at 332. This analytical framework (which was accepted with favor by both the Appellate Division and Supreme Court in the appeals which followed) consists of the following three components:

> 1. the nature and extent of the integration between the hospital and the subject facility. The greater the integration the more likely it is that a facility is serving a hospital purpose. . . ;
>
> 2. the extent to which the activity conducted in the facility is under the control or supervision of the hospital medical staff. The lesser the amount of supervision, the more likely it is that the activity is not serving a hospital purpose; and
>
> 3. whether the facility serves primarily hospital patients or primarily members of the general public.
>
> [Id. at 332 (emphasis added).]

The third component of this analytical framework recognizes the primary or predominant use as a determinative factor in considering whether the entire facility qualifies for exemption. In creating this framework, Judge Kuskin stated, "I conclude that the predominant use standard should be incorporated into the third

23

component of the Analytical Framework, not in order to apportion the tax exemption for a particular facility . . . based on percentage of use for hospital purposes, but in order to determine whether or not the facility, in its entirety, qualifies for exemption." Id. at 333 (emphasis added).

And finally, in Bordentown, the court denied the Director's motion for summary judgment after determining that there were material facts in dispute. The court concluded that it "must inquire into how the subject property was being used at the time of the classification of the property by the assessor." Bordentown, 24 N.J. Tax at 587 (emphasis added). The court thus implied that a property's primary or predominant use is determinative as to its classification.

The predominant use test has also been utilized in state tax matters. In Black Whale, Inc. v. Dir., Div. of Taxation, 15 N.J. Tax 338 (Tax 1995), the court applied this test to a use tax assessment imposed on a taxpayer's use in New Jersey of a fishing and passenger boat. The court held that "when there is mixed use, both exempt and non-exempt, in the absence of some other statutory or regulatory provision . . . a predominant use test is appropriate." Id. at 349 (emphasis added).

Likewise, in KSS Transp. Corp. v. Baldwin, 9 N.J. Tax 273 (Tax 1987), the Tax Court affirmed the Director's assessment of use tax on the purchase of an airplane holding that the predominant use of the aircraft was private, rather than common carriage, thus rendering the statutory exemption for "common carrier"

24

purposes to be inapplicable. In doing so, Judge Lasser held that, "[i]n the absence of regulations adopted by the Director, I am satisfied that a predominant use test is a reasonable interpretation of the statute." Id. at 279 (emphasis added).

Notably, a predominance standard has been incorporated in both the Act and in the CITT statute with respect to the exemption of certain transfers from the additional RTF and from the CITT, respectively. Specifically, transactions involving the transfer of real property that are incidental to a corporate merger or acquisition are exempt from the additional RTF if the equalized assessed value of the real property transferred is less than 20% of the total value of all assets exchanged in the merger or acquisition. N.J.S.A. 46:15-7.2(b)(2). Likewise, transactions involving the transfer of a controlling interest in an entity that are incidental to a corporate merger or acquisition are also exempt from the CITT if the equalized assessed value of the real property transferred is less than 20% of the total value of all assets exchanged in the merger or acquisition. N.J.S.A. 54:15C-1(c)(5).

Based upon the above precedent and statutory language, the court concludes that a predominant use test is the appropriate standard to be utilized in determining a mixed-use property's classification for assessment purposes, and thus for purposes of determining imposition of the additional RTF. The standard is particularly appropriate because property classification under the regulations is based upon a property's use. Therefore, the court adopts the predominant use test for resolution

of the within matters.

As indicated earlier, the undisputed facts have established the following as to Lot 1.03:

- On a square footage basis, apartment use comprises approximately 86% of the building, whereas retail use only comprises approximately 14% of the building; and

- On a gross income basis, apartment use has generated approximately 87% of the income associated with the building during calendar years 2023 through 2025, whereas retail use only generated approximately 13% of the income from the building during that same period.

And as to Lot 1.05:

- On a square footage basis, apartment use comprises more than approximately 90% of the building, whereas retail use only comprises less than approximately 10% of the building; and

- On a gross income basis, apartment use has generated approximately 89% of the income associated with the building during calendar years 2023 through 2025, whereas retail use only generated approximately 11% of the income from the building during that same period.

These facts clearly demonstrate that the predominant use of the subject properties is multi-family residential apartments rather than commercial.

## III. Conclusion

For the foregoing reasons, the court concludes that in the absence of further statutory guidance from the Legislature and/or the adoption of administrative regulations by the Director, a predominant use test is the appropriate standard for determining the classification of mixed-use properties. Applying this test to the

undisputed facts presented, the court finds that the subject properties should be reclassified from 4A to 4C.[19]

The court therefore grants plaintiff's motions for summary judgment. Orders will be entered in accordance with this opinion.

---

[19] The court recognizes that the determination as to predominant use may not be as clear in other circumstances. As such, the court respectfully urges the Legislature and/or the Director to address property classification for mixed-use properties and provide clear standards for future guidance.